Beebe, Appellant, *v.* Union Railroad Company.

Argued November 10, 1964. Before Ervin, Wright, Woodside, Watkins, Montgomery, and Flood, JJ. (Rhodes, P. J., absent).

*Michael R. Stabile,* with him *Dennis C. Harrington,* and *McArdle, Harrington, Feeney & McLaughlin,* for appellant.

*Chauncey Pruger,* with him *Reed, Smith, Shaw & McClay,* for appellee.

OPINION BY FLOOD, J., March 18, 1965:

Glenn C. Beebe brought this suit in assumpsit for loss of earnings in the sum of $8,673 against his employer, the Union Railroad Company. His complaint alleges that he had been injured in the course of his employment and, in an action brought under the Federal Employers' Liability Act, had obtained a verdict against the railroad on June 25, 1957; that from that date until November 4, 1958, the railroad "held him out of service without just cause" in violation of the contract existing between the railroad and the Brotherhood of Railroad Trainmen, the plaintiff's bargaining agent, which contract gave him "certain rights of seniority and other benefits", and also in violation of specific promises (that he was not putting his job in jeopardy by prosecuting the suit to recover for his injury and would be returned to work immediately) made by a claim agent and an attorney for the railroad. The court below, upon the defendant's motion, entered an or-

der dismissing the complaint, holding: (1) the complaint did not allege facts showing a wrongful discharge, and therefore the National Railroad Adjustment Board had exclusive jurisdiction, precluding any state court remedy, (2) even if there was a wrongful discharge, the plaintiff was barred because he failed to show that he had exhausted his administrative remedies as required under Pennsylvania law, and (3) relief could not be based upon promissory estoppel because of any verbal promise made to the plaintiff by the defendant's agents since the collective bargaining contract made between plaintiff's union and the defendant railroad precluded any inconsistent individual arrangements between the railroad and a single employe.

The appellant argues that the court could not determine from the pleadings that he was not discharged, and that if he were discharged, the Railway Labor Act did not preclude suit in the state court. We agree with the court below that the plaintiff was not discharged and that, on the contrary, the pleadings affirmatively show that he did not "accept his discharge as final". See comment of Mr. Justice BLACK in *Slocum v. Delaware L. & W. R. Co.*, 339 U. S. 239, at 244 (1950): "Moore was discharged by the railroad. He could have challenged the validity of his discharge before the Board, seeking reinstatement and back pay. Instead he chose to accept the railroad's action in discharging him as final, thereby ceasing to be an employe, and brought suit claiming damages for breach of contract. As we there held, the Railway Labor Act does not bar courts from adjudicating such cases." We also agree with the holding of the court below that even if the plaintiff had been discharged, he could not bring suit under the law of Pennsylvania until he had exhausted his administrative remedies.

The Railway Labor Act, May 20, 1926, c. 347, §1, 44 Stat. 577, as amended, May 24, 1949, c. 139, §127, 63 Stat. 107, 45 U.S.C.A. §151 et seq., provides in §153(i) that "disputes between an employee or group of employees and a carrier or carriers growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions . . . shall be handled in the usual manner up to and including the chief operating officer of the carrier designated to handle such disputes; but, failing to reach an adjustment in this manner, the disputes may be referred by petition of the parties or by either party to the appropriate division of the Adjustment Board with a full statement of the facts and all supporting data bearing upon the disputes."

The plaintiff bases his contention on *Moore v. Illinois Central Railroad Co.*, 312 U. S. 630 (1941), which held that the Railway Labor Act did not bar an employe's suit for wages in a state court based upon wrongful discharge. The authority of that case, however, has been seriously weakened by later decisions.

It is true that the *Moore* holding was reaffirmed in *Slocum v. Delaware L. & W. R. Co.*, supra, and in *Transcontinental & Western Air, Inc. v. Koppal*, 345 U. S. 653 (1953). But in the latter case, the court also held that, if state law so requires, the employe must show that he has exhausted his administrative remedies under his contract. The contract provided a grievance procedure "comparable to that . . . of the Railway Labor Act". The court held that since the contract was a Missouri contract and Missouri law required that the plaintiff first exhaust his administrative remedies, his failure to do so required the affirmance of the action of the District Court dismissing the complaint in an action based upon wrongful discharge.

Pennsylvania also requires the exhaustion of administrative remedies as a prerequisite to an action

for wrongful discharge in such a case. *Falsetti v. Local U. No. 2026, U.M.W.A.*, 400 Pa. 145, 161 A. 2d 882 (1960). In that case our Supreme Court adopted the language of Judge FULD in *Parker v. Borock*, 5 N.Y. 2d 156, 162, 156 N.E. 2d 297, 300 (1959), as follows: ". . . absent specific language giving the employee the right to act on his own behalf, it is my conclusion that, under a collective bargaining agreement such as the one before us—which contains provision for the submission of unsettled disputes to arbitration—the union alone has a right to control the prosecution of discharge cases. (See Cox, Rights Under a Labor Agreement, 69 Harv. L. Rev. 601, 648-652.)" The Pennsylvania Court said further: "If the Union, in processing an employee's grievance, does not act in good faith, in a reasonable manner and without fraud, it becomes liable in damages for breach of duty . . ." *Falsetti v. Local U. No. 2026, U.M.W.A.*, supra, at 170, 171, 161 A. 2d 894, 895.

However, we need not consider the Pennsylvania rule as to exhaustion of remedies, or whether the case before us falls within any of its exceptions, since the matter has now become one of federal law, and such claims must be brought in the first instance before the Railway Adjustment Board unless the parties have expressly agreed to the contrary.

In *Republic Steel Corp. v. Maddox*, 379 U. S. 650, 85 S. Ct. 614, 13 L. Ed. 2d 580 (1965), it was held that in a suit for severance pay (to which appellee in that case was entitled under the contract, if his layoff was the result of a decision of the appellant to close its mine) federal law governs and suit may not be maintained except after following the grievance procedure under the contract between the union and the employer.

The court said: "Federal jurisdiction in both Moore and Koppal was based on diversity; federal law was

not thought to apply merely by reason of the fact that the collective bargaining agreements were subject to the Railway Labor Act. Since that time the Court has made it clear that substantive federal law applies to suits on collective bargaining agreements covered by §204 of the Railway Labor Act, *International Assn. of Machinists v. Central Airlines, Inc.,* 372 U. S. 682, and by §301(a) of the LMRA, *Textile Workers v. Lincoln Mills,* 353 U. S. 448. Thus a major underpinning for the continued validity of the Moore case in the field of the Railway Labor Act has been removed, . . .

". . . Grievances depending on severance claims are not critically unlike other types of grievances. Although it is true that the employee asserting the claim will necessarily have accepted his discharge as final, it does not follow that the resolution of his claim can have no effect on future relations between the employer and other employees. Severance pay and other contract terms governing discharge are of obvious concern to all employees, and a potential cause of dispute so long as any employee maintains a continuing employment relationship. Only in the situation in which no employees represented by the union remain employed, as would be the case with a final and permanent plant shutdown, is there no possibility of a work stoppage resulting from a severance-pay claim. But even in that narrow situation, if applicable law did not require resort to contract procedures, the inability of the union and employer at the contract negotiation stage to agree upon arbitration as the exclusive method of handling permanent shutdown severance claims in all situations could have an inhibiting effect on reaching an agreement. If applicable law permitted a court suit for severance pay in any circumstances without prior recourse to available contract remedies, an employer seeking to limit the modes of redress that could be

used against him could do so only by eliminating contract grievance procedures for severance-pay claims ....

"There are, then, positive reasons why the general federal rule should govern grievances based on severance claims as it does others. Furthermore, no positive reasons appear why the general federal rule should not apply. 'Comprehensiveness is inherent in the process by which the law is to be formulated under the mandate of *Lincoln Mills*,' and 'the subject matter of §301(a) "is peculiarly one that calls for uniform law." ' *Teamsters Local v. Lucas Flour Co.,* 369 U. S. at 103. Maddox' suit in the present case is simply on the contract, and the remedy sought, award of $694.08, did not differ from any that the grievance procedure had power to provide. Federal law governs 'suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter . . . .' Section 301(a) of the LMRA, 29 U.S.C. §185(a), *Textile Workers v. Lincoln Mills,* supra. The suit by Maddox clearly falls within the terms of the statute and within the principles of *Lincoln Mills,* and because we see no reason for creating an exception, we conclude that the general federal rule applies."

*Republic Steel Corp. v. Maddox,* supra, seems to us to govern the case before us, as Mr. Justice BLACK makes clear in his dissenting opinion. But the governing act in the *Republic Steel* case was the Labor Management Relations Act, and footnote 14 to the majority opinion warns as follows: "By refusing to extend *Moore v. Illinois Central R. Co.,* to §301 suits, we do not mean to overrule it within the field of the Railway Labor Act. Consideration of such action should properly await a case presented under the Railway Labor Act in which the various distinctive features of the administrative remedies provided by that act can be appraised in context, e.g., the make-up of

the Adjustment Board, the scope of review from monetary awards, and the ability of the Board to give the same remedies as could be obtained by court suit."

However, the make-up of the Railroad Adjustment Board under §153 of the Railway Labor Act is very similar to that of the National Labor Relations Board under the Labor Management Relations Act. The Adjustment Board can give the same remedy—a money award—as is sought here in the suit in the Court of Common Pleas of Allegheny County, and adequate review by the court is provided in the act. *Order of Railway Conductors of America v. Pitney,* 326 U. S. 561, at 566 (1946). We cannot see how the *Moore* case is still effective to permit a recovery in a state court suit in this case.

There is no basis for a claim based upon promissory estoppel, by reason of promises by the railroad to the plaintiff, any more than there would be if a separate contract were made between the railroad and the plaintiff governing the conditions of his employment. Such a promise, evidently relied upon to escape the requirements of the Railway Labor Act, is clearly inconsistent with the union agreement and therefore invalid. *J. I. Case v. National Labor Relations Board,* 321 U. S. 332, 337, 339 (1944).

In the light of the opinion of the Supreme Court of the United States in *Republic Steel Corp. v. Maddox,* supra, we conclude that the plaintiff has not stated a cause of action upon which relief can be granted in a state court. It is equally clear that an amendment to the effect that he was discharged would not help him. Such a conclusion could not be accepted in the face of averments showing he never accepted his discharge as final and that he returned to the payroll in November 1958. He admits that he has not pursued his administrative remedies. No change in his averments as to promissory estoppel would help because no action can

154

be based on promissory estoppel in this type of case. The plaintiff suggests no other respects in which he might amend to aver a good cause of action.

Order affirmed.