Joe E. PARSONS, Appellant,

v.

NORFOLK AND WESTERN RAILWAY
COMPANY, a corporation, Appellee.

No. 14712.

United States Court of Appeals,
Fourth Circuit.

Argued Jan. 5, 1971.

Decided May 14, 1971.

W. A. Thornhill, III, Beckley, W. Va.
(James F. Vaughan, Jr., Beckley, W.
Va., on the brief), for appellant.

Joseph M. Sanders, Sr., Bluefield, W.
Va. (Sanders & Blue, Bluefield, W. Va.,
on the brief), for appellee.

Before HAYNSWORTH, Chief Judge,
and BOREMAN and WINTER, Circuit
Judges.

HAYNSWORTH, Chief Judge:

The sole question on this appeal is
whether a civil action may be brought
by a railroad employee against his em-
ployer on a contract governing rates of
pay, to which his union was a party,
when he has not exhausted his adminis-
trative remedies. The company defend-
ed on the grounds that the plaintiff had
exhausted neither his contractual right
of arbitration nor his statutory reme-
dies through the Railroad Adjustment
Board.[1] The district court, 310 F.Supp.
1197, dismissed the action, and we af-
firm.

The dispute arises out of the 1959
merger between the Norfolk & Western
Railway Company and the Virginian
Railway Company. Pursuant to the
merger, both companies and the union
entered into an "Agreement for Protec-

---

1. 45 U.S.C.A. § 153, subd. 1(i):

The disputes between an employee or
group of employees and a carrier or
carriers growing out of grievances or out
of the interpretation of agreements con-
cerning rates of pay, rules, or working
conditions * * * shall be handled in
the usual manner up to and including
the chief operating officer of the carrier
designated to handle such disputes; but,
failing to reach an adjustment in this man-
ner, the disputes may be referred by peti-
tion of the parties or by either party
to the appropriate division of the Adjust-
ment Board with a full statement of the
facts and all supporting data bearing upon
the disputes.

tion of Employees," which provided that "none of the present employees of either carrier shall be deprived of employment or placed in a worse position with respect to compensation at any time during his employment because of the merger of the said railroads * * *." Implementation of the provision for compensation protection was achieved by computing the average monthly compensation for employees for the year preceding the merger, which amount each employee would be entitled to receive subsequently as a minimum, regardless of actual earnings.[2] Parsons contends that his "average monthly compensation" is required to be increased by the amount of any general wage increases granted subsequent to the merger, and that the company's failure to so increase the amount has placed him in a worse position in violation of the contract and of § 5(2) of the Interstate Commerce Act [49 U.S.C.A. § 5(2) (f)], which requires "a fair and equitable arrangement to protect the interests of the railroad employees affected" by any merger.

Parsons filed a claim with the company, through his union representative, for adverse pay. The company and the union representative reached an agreement on the amount of Parsons' "average monthly compensation" by including within that figure all regular time and overtime earned during the year prior to the merger but excluding any adjustment for subsequent general wage increases.[3] Parsons took issue with the method of computation and wrote several letters in protest. However, at no time did he avail himself of the opportunity to seek arbitration as provided in the Agreement or to present his claim to the appropriate division of the Railroad Adjustment Board.

Parsons relies on Moore v. Illinois Central Railroad Co., 312 U.S. 630, 61 S.Ct. 754, 85 L.Ed. 1089 in support of his contention that he may obtain judicial review of his claim without presenting it to the Board. We cannot agree, even if the continuing vitality of *Moore* be assumed. *Moore* was an action for wrongful discharge, brought on the basis of a state-created procedural right. The Supreme Court held that the discharged employee was not required to present his claim to the Board as a prerequisite to suit, but could treat his discharge as final and proceed with his common law action for vindication of his rights. However, *Moore* has never been applied to eliminate the requirement of exhaustion of Board remedies in cases of disputes involving a continuing employment relationship. In Slocum v. Delaware, Lackawanna & Western Railroad Co., 339 U.S. 239, 70 S.Ct. 577, 94 L.Ed. 795, an action for declaratory judgment between a railroad company and two unions, the Court held that the dispute must be presented to the Board. *Moore* was not regarded as controlling:

"Moore was discharged by the railroad. He could have challenged the validity of his discharge before the Board, seeking reinstatement and back pay. Instead he chose to accept the railroad's action in discharging him as final, thereby ceasing to be an employee, and brought suit claiming damages for breach of contract. As we there held, the Railway Labor Act does not bar courts from adjudicating such cases. A common-law or statutory action for wrongful discharge differs from any remedy which the Board has power to provide, *and does not involve questions of future relations between the railroad and its other employees.*" 339 U.S. 239, 244, 70 S.Ct. 577, 580. [Emphasis supplied.]

The distinction between actions involving discharges, founded upon state

---

2. The guarantee is subject to certain exceptions and qualifications not relevant here.

3. The union appears to take a position adverse to Parsons' in the dispute. Seemingly, it regards the inclusion of overtime pay in the calculation of an employee's 'average monthly compensation' as a *quid pro quo* for its abandonment of efforts to have the compensation adjusted for later wage increases.

procedural rights, and actions involving continuing employment and affecting future employer-employee relations, was again noted in Transcontinental & Western Air, Inc. v. Koppal, 345 U.S. 653, 73 S.Ct. 906, 97 L.Ed. 1325 and still again in Republic Steel Corp. v. Maddox, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580, where it was regarded as critical.

The Court in *Maddox* seemed to undermine *Moore*, even as thus confined. It said:

"Federal jurisdiction in both *Moore* and *Koppal* was based on diversity; federal law was not thought to apply merely by reason of the fact that the collective bargaining agreements were subject to the Railway Labor Act. Since that time the Court has made it clear that substantive federal law applies to suits on collective bargaining agreements covered by § 204 of the Railway Labor Act. [Citations omitted.] Thus a major underpinning for the continued vitality of the *Moore* case in the field of the Railway Labor Act, and more importantly in the present context, for the extension of its rationale to suits under § 301(a) of the LMRA, has been removed." 379 U.S. 650, 655, 85 S.Ct. 614, 617.

In Walker v. Southern Railway Co., 4 Cir., 354 F.2d 950, a discharge case brought in state court and removed to the federal district court on diversity grounds, we felt that *Maddox* compelled us to regard *Moore* as overruled even within its own limited sphere.[4] We reversed a judgment in favor of the plaintiff for wrongful discharge and ordered the action dismissed for his failure to present the claim to the Railroad Adjustment Board. Relying on the unavailability in practice of Board remedies prior to the 1966 amendments to the Railway Labor Act, and the contrasting effectiveness of administrative remedies available under the National Labor Relations Act, the Supreme Court reversed, holding exhaustion of Board remedies not required in that case. Walker v. Southern Railway Co., 385 U.S. 196, 87 S.Ct. 365, 17 L.Ed.2d 294.[5]

The present action was instituted in 1968. The Board now operates under the changed procedures instituted by the 1966 amendments, and there is no indication that its remedies are not now available and effective.[6] Under the circumstances, we doubt that the Supreme Court would continue to follow *Moore* even on its own facts, in a discharge action grounded on state remedies. Certainly we cannot believe the Court would now extend *Moore* to a situation beyond those facts, in an action grounded solely and expressly on federal statutes and which involves a dispute arising out of a continuing employment relationship whose resolution will affect the future relations between the company and many of its employees.[7] Accordingly, we hold

---

4. See also Neal v. System Board of Adjustment, 8 Cir., 348 F.2d 722; Beebe v. Union R. Co., 205 Pa.Super. 146, 208 A.2d 16; Caffery v. New York Central R. Co., 24 A.D.2d 1075, 265 N.Y.S.2d 742.

5. "In consequence [of widespread dissatisfaction with the efficacy of Board remedies] Congress enacted Public Law 89–456, 80 Stat. 208, effective June 20, 1966, which drastically revises the procedures in order to remedy the defects. Of course the new procedures were not available to petitioner, and his case is governed by *Moore*, *Slocum*, and *Koppal*. The contrast between the administrative remedy before us in *Maddox* and that available to petitioner persuades us that we should not overrule those decisions in

his case." 385 U.S. 196, 198–199, 87 S.Ct. 365, 366.

6. Through and after June 20, 1966, the effective date of the amendments, Parsons was involved in attempts to obtain the increase through negotiations.

7. Several Courts of Appeals have considered the *Moore* doctrine since the Supreme Court's decision in *Walker*. Without exception they appear to read *Walker* as authority for the continuing applicability of *Moore* only with respect to discharge cases in which the remedial machinery provided by the 1966 amendments was unavailable. Belanger v. New York Central R. Co., 6 Cir., 384 F.2d 35, 36; Rothlein v. Armour & Co., 3 Cir., 391 F.2d 574, n. 19 at 579; Ferguson

that the plaintiff's failure to present his claim to the appropriate division of the Railroad Adjustment Board [8] bars his action on the merger agreement.

Affirmed.

v. Seaboard Air Line R. Co., 5 Cir., 400 F.2d 473, 474; Slagley v. Illinois Central R. Co., 7 Cir., 397 F.2d 546, n. 3 at 549. See Pacilio v. Pennsylvania R. Co., 2 Cir., 381 F.2d 570, applying *Moore* to a pre-1966 discharge action.

8. No challenge to the Board's jurisdiction can be sustained on the ground that the

Agreement is not a collective bargaining agreement. Such an agreement, though it does not set basic rates of pay, clearly "concern[s] rates of pay," and is entered into as the result of bargaining between the railroad and the union. See O'Mara v. Erie Lackawanna R. Co., 2 Cir., 407 F.2d 674.