535 A.2d 1136

**Robert S. ROCKER, Appellant,**

v.

**HARVEY COMPANY, Appellee.**

Superior Court of Pennsylvania.

Argued Nov. 18, 1987.

Filed Jan. 6, 1988.

Ronald L. Chicka, Mount Pleasant, for appellant.

Charles O. Zebley, Jr., Uniontown, for appellee.

Before MONTEMURO, POPOVICH and HESTER, JJ.

MONTEMURO, Judge:

In this wrongful discharge action, appellant Robert S. Rocker appeals from the Order of the Court of Common Pleas of Westmoreland County, granting a judgement n.o.v. in favor of appellee Harvey Company. The pertinent facts leading up to the present appeal are as follows.

Appellant was employed by appellee from May 1974 until December 1981. A collective bargaining agreement between appellee and the Teamsters, Chauffeurs, Warehousemen and Helpers, Local Union 30 governed appellant's employment relationship with appellee. Appellee and the union had entered into the collective bargaining agreement on November 24, 1981. On December 30, 1981, at approximately 2:00 p.m., a supervisor employed by appellee requested appellant to make a delivery to Uniontown, Pennsylvania. Appellant orally refused to make the delivery and, upon request, submitted a written document to appellee before going home for the remainder of the afternoon. The document stated: "I, Bob Rocker, refuse to deliver to Uniontown and I quit of [sic] of today." Shortly after he arrived home, appellant telephoned appellee and was informed that he should not report to work the following day because he had been suspended. Appellant was told to report back to work on Monday, January 2. When appellant reported back to work his superior informed him that his employment with appellee had been terminated.

Following his discharge, appellee discussed with a union representative the possibility of filing a grievance. Although appellant was familiar with the grievance procedure contained in the collective bargaining agreement, he neither filed a grievance nor took any further action to appeal his discharge in accordance with the procedures outlined in the collective bargaining agreement.[1]  Appellant applied for

1. The relevant portions of the collective bargaining agreement are as follows:

Article X—SUSPENSION AND DISCHARGE

(a) The employer retains the right to suspend or discharge any employee for just cause.  The employer agrees that it will notify the union within twenty-four (24) hours after a suspension or discharge of any employee and the reason therefore.  Should there be any questions regarding any suspension or discharge, by the employee affected or the union, to the effect that such suspension or discharge was improper and not for just cause, the employer and union agree that said employee will be given a hearing before representatives of the employer and the union within three (3) days regarding said suspension or discharge.  In the event that the parties are unable to resolve this matter amicably, the dispute may be submitted to arbitration by either the employer or the union.  Employees who fail to appeal from the employer's suspension or discharge within forty-eight (48) hours from the time he receives notice of such discharge or suspension, and send a written copy of such appeal to the union and the employer shall forfeit their right to appeal.

Article XI—ADJUSTMENT OF GRIEVANCE

(a) The union recognizes the responsibilities imposed upon it as the exclusive bargaining agent of the Unit as defined in Article I, and realizes that through its bargaining position it shall recognize these responsibilities; therefore, the union agrees that during the term of this Agreement neither the union nor its agents nor its members will authorize or engage in a work stoppage or slow-down of work or strike.  It is further agreed that in all cases of an unauthorized strike, slow-down, walk-out or any unauthorized cessation of work in violation of this Agreement, the union shall not be liable for damages resulting from such unauthorized acts of its members.  The employer agrees that during the term of this Agreement there shall be no lockouts.  However, in the event the employer refuses to comply with the grievance procedure as outlined in this Agreement, or fails to comply with an arbitration award, the union shall have the right to strike or engage in any other course or activity to enforce its demands.

(b) A grievance is hereby jointly defined as any controversy, complaint, misunderstanding or dispute between the union or any of the employees represented by the union or any of the employees represented by the union under this Labor Agreement and the Company.  Any and all grievances arising between the Company

unemployment compensation but was denied such benefits as a result of having "resigned his job in writing to the employer ... without cause or necessity." [2] Appellant commenced the instant action in assumpsit on February 17, 1983, claiming that he had been wrongfully discharged by appellee. At the close of appellant's case-in-chief appellee moved for an involuntary nonsuit because of appellant's failure to avail himself of the grievance and arbitration machinery outlined in the collective bargaining agreement. The trial court denied the motion, holding that failure to grieve and arbitrate is a matter of defense. At the conclusion of trial appellee moved for a directed verdict based on appellant's failure to pursue his contractual remedies prior to filing suit. The trial court found that appellee's failure to raise the issue by way of "new matter" precluded it from raising the issue as a matter of defense. The jury returned a verdict in favor of appellant in the amount of $44,480.48. Appellee filed a timely post-trial motion seeking judgment n.o.v. or a new trial, asserting that: (1) appellant failed to state a claim upon which relief can be granted because he failed to utilize the grievance and arbitration procedures, and (2) the denial of unemployment benefits to appellant because he had voluntarily quit his job collaterally estopped appellant from relitigating that issue. The trial court granted appellee's motion for judgment n.o.v. based on appellant's failure to exhaust the dispute resolution remedies provided in the collective bargaining agreement. This timely appeal followed.

> and the union or any employee represented by the Union and covered by this Agreement shall be settled in the following manner:
>
> .    .    .    .    .
>
> (5) Both parties agree to accept the decision of the arbitrator as final and binding.
>
> The evidence adduced at trial demonstrated that appellant had previously filed several grievances with the union. It is therefore apparent that appellant was familiar with the grievance procedure contained in the collective bargaining agreement.

**2.** A hearing was held before a referee on February 16, 1982, who affirmed the decision of the Office of Employment Security denying appellant unemployment benefits.

Appellant presents a single issue for our review, namely, whether appellee's failure to raise the grievance and arbitration procedure as an affirmative defense in its "new matter" effectuated a waiver of the issue and precluded the trial court from granting appellee's motion for judgment n.o.v. based on appellant's failure to exhaust his contractual remedies? We affirm.

■ The standard of review of an appellate court when considering an order granting or denying judgment n.o.v. is the same as that used by the trial court: we must determine whether there was sufficient competent evidence to sustain the verdict, granting the verdict winner the benefit of every reasonable inference that can be reasonably drawn from the evidence and rejecting all unfavorable testimony and inferences. Judgment n.o.v. is appropriate only in a clear case where the facts are such that no two reasonable minds could fail to agree that, as a matter of law, the party has failed to make out his case. *Gajkowski v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America*, 350 Pa.Super. 285, 305, 504 A.2d 840, 851 (1986); *Ingrassia Construction Company, Inc. v. Walsh*, 337 Pa.Super. 58, 61, 486 A.2d 478, 480 (1984).

Although the provisions of the collective bargaining agreement are somewhat ambiguous, apparently an employee who questions the propriety of his discharge has a right to a hearing before representatives of both the union and the employer, if he requests such within forty eight (48) hours of discharge. In the event that he is dissatisfied with the outcome of the hearing, the employee may force the employer to submit the dispute to binding arbitration.[3]

■ Generally, unless a statutory or contractual provision exists to the contrary, an employer may terminate the employment relationship with its employee for any or no

3. Arguably appellant could have used the grievance procedure to obtain the same result. However, regardless of the procedure followed, it is clear that the parties intended the final forum for dispute resolution to be binding arbitration, which was never reached because of appellant's lack of diligence in pursuing the matter.

reason. *Geary v. United States Steel Corporation,* 456
Pa. 171, 175, 319 A.2d 174, 176 (1974); *Banas v. Matthews
International Corporation,* 348 Pa.Super. 464, 479, 502
A.2d 637, 644 (*en banc*) (1985). A collective bargaining
agreement is simply a contract, and any rights and reme-
dies that the appellant possesses must be derived solely
from the agreement itself. *McCluskey v. Department of
Transportation,* 37 Pa.Commw. 598, 604, 391 A.2d 45, 49
(1978). However, unlike a typical contract, interpretation of
the provisions of a collective bargaining agreement is exclu-
sively a matter of federal substantive law even though a
state court may have subject matter jurisdiction over the
dispute.[4] See *Republic Steel Corporation v. Maddox,* 379
U.S. 650, 657, 85 S.Ct. 614, 618, 13 L.Ed.2d 580 (1965); See
also *Teamsters, Chauffeurs, Warehousemen and Helpers
v. Lucas Flour Company,* 369 U.S. 95, 82 S.Ct. 571, 7
L.Ed.2d 593 (1962); *Charles Dowd Box Company v. Court-
ney,* 368 U.S. 502, 82 S.Ct. 519, 7 L.Ed.2d 483 (1962). The
Supreme Court has articulated why federal labor law
should be paramount in areas which implicate Section 301 of
the LMRA as follows:

> Comprehensiveness is inherent in the process by which
> the law is to be formulated under the mandate of Lincoln
> Mills, requiring issues raised in suits of a kind covered by
> § 301 to be decided according to the precepts of federal
> labor policy.

> More important, the subject matter of § 301(a) 'is pecu-
> liarly one that calls for uniform law.' The possibility that

**4.** The Labor Management Relations Act (LMRA) provides concurrent
jurisdiction for state and federal courts for disputes involving the
provisions of collective bargaining agreements. Appellant's complaint
in assumpsit was based on violation of the collective bargaining
agreement between union and appellee, thus implicating subject mat-
ter encompassed by the LMRA. Section 301 of the LMRA, 29 U.S.C.
§ 185(a), provides:

> Suits for violation of contracts between an employer and a labor
> organization representing employees in an industry affecting com-
> merce as defined by this Act, or between any such labor organiza-
> tions, may be brought in any district court of the United States
> having jurisdiction of the parties, without respect to the amount in
> controversy or without regard to the citizenship of the parties.

individual contract terms might have different meanings under state and federal law would inevitably exert a disruptive influence upon both the negotiation and administration of collective agreements. Because neither party could be certain of the rights which it had obtained or conceded, the process of negotiating an agreement would be made immeasurably more difficult by trying to formulate contract provisions in such a way as to contain the same meaning under two or more systems of law which might someday be invoked in enforcing the contract. Once the collective bargain was made, the possibility of conflicting substantive interpretations under competing legal systems would tend to stimulate and prolong disputes as to its interpretation. Indeed, the existence of possibly conflicting legal concepts might substantially impede the parties' willingness to agree to contract terms providing for final arbitral or judicial resolution of disputes.

*Lucas Flour Company, supra* 369 U.S. at 103–104, 82 S.Ct. at 576–577.

In the present case, appellant's assertion that he has been wrongfully discharged can only be based on the provisions of the collective bargaining agreement, which modifies the traditional common law rule that an employment contract is terminable at will by either party. The source of appellant's right not to be discharged, the breach of which would entitle him to damages for wrongful discharge, stems from the collective bargaining agreement between the union and appellee. Consequently, appellant's claim that he was unlawfully discharged and appellee's counter-assertion that appellant voluntarily quit his job, as well as the procedure to be followed in the event of such a dispute, necessarily involves construction of the provisions of the collective bargaining agreement to determine which party's interpretation is correct. *Accord, Andrews v. Louisville and Nashville Railroad Company,* 406 U.S. 320, 324, 92 S.Ct. 1562, 1565, 32 L.Ed.2d 95 (1972). Because the question presented in this suit implicates the precepts of federal labor policy,

we turn now to the federal substantive law which lays out that policy.

The courts which have heard disputes involving subject matter encompassed by the LMRA have established a clear policy for settlement of disputes in accordance with contractually agreed-upon grievance and arbitration procedures. These courts have consistently held that in order to maintain an action based on a labor contract, an employee must first exhaust the grievance procedure and the arbitration provisions contained in the agreement. Failure to exhaust the remedies provided in the collective bargaining agreement may be a valid defense to a suit brought by an employee against his employer for wrongful discharge. *See Republic Steel Corporation v. Maddox, supra; Koshatka v. Philadelphia Newspapers, Inc.,* 762 F.2d 329 (3d Cir.1985); *Findley v. Jones Motor Freight,* 639 F.2d 953 (3d Cir.1981); *Beebe v. Union Railroad Company,* 205 Pa.Super. 146, 208 A.2d 16 (1965). *See also United Steelworkers of America v. Enterprise Wheel and Car Corporation,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); *United Steelworkers of America v. Warrior and Gulf Navigation,* 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers of America v. American Manufacturing Company,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *Textile Workers Union v. Lincoln Mills,* 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957). We look to the Supreme Court's decision in *Maddox, supra,* to guide us in resolving the present controversy. In *Maddox,* an employee sued his employer in state court for severance pay which was allegedly due under the terms of a collective bargaining agreement between the employer and the employee's union. The collective bargaining agreement provided a three-step grievance procedure, to be followed by binding arbitration. The Supreme Court held that the employee's failure to avail himself of the grievance procedure precluded him from maintaining an action in state court. In so holding, the Court explained:

As a general rule in cases to which federal labor law applies, federal labor policy requires that individual employees wishing to assert contract grievances must attempt use of the contract grievance procedure agreed upon by the employer and union as a mode of redress. If the union refuses to press or only perfunctorily presses the individual's claim, differences may arise as to the forms of redress available. But unless the contract provides otherwise, there can be no doubt that the employee must afford the union the opportunity to act on his behalf. Congress has expressly approved the contract grievance procedures as a preferred method for settling disputes and stabilizing the 'common law' of the plant. Union interest in prosecuting employee grievances is clear. Such activity complements the union's status as exclusive bargaining representative by permitting it to participate actively in the continuing administration of the contract. In addition, conscientious handling of grievance claims will enhance the union's prestige with employees. Employer interests, for their part, are served by limiting the choice of remedies available to aggrieved employees. And it cannot be said, in the normal situation, that contract grievance procedures are inadequate to protect the interests of an aggrieved employee until the employee has attempted to implement the procedures and found them so. A contrary rule which would permit an individual employee to completely sidestep available grievance procedures in favor of a lawsuit has little to commend it. In addition to cutting across the interests already mentioned, it would deprive employer and union of the ability to establish a uniform and exclusive method for orderly settlement of employee grievances. If a grievance procedure cannot be made exclusive, it loses much of its desirability as a method of settlement. A rule creating such a situation 'would inevitably exert a disruptive influence upon both the negotiation and administration of collective agreements.'

*Maddox, supra* 379 U.S. at 652–653, 85 S.Ct. at 616–617 (citations omitted).

Just as in *Maddox,* the collective bargaining agreement in the instant case contains a comprehensive dispute resolution procedure. In addition, if the dispute can not be resolved through this procedure, the agreement provides that it will be settled through binding arbitration. While appellant did inquire about the possibility of filing a grievance, the trial court found, and we agree, that appellant did not pursue the matter with representatives of the union. As a result, appellee could assert appellant's failure to exhaust the remedies outlined in the collective bargaining agreement as a defense to appellant's action for wrongful discharge.

While appellee possessed a valid defense to this action, the question still remains as to the propriety of the manner in which the defense was raised before the trial court. We note that although we must apply federal substantive law, the procedural rules of the forum, namely, the Pennsylvania Rules of Civil Procedure, govern the procedural aspects of this case. *See In re Mackarus' Estate,* 431 Pa. 585, 246 A.2d 661 (1968) (Pennsylvania Rules of Civil Procedure apply to proceedings arising in courts subject to those rules). Appellant claims that appellee was required to assert the defense of failure to exhaust contractual remedies as an affirmative defense. He contends that appellee's failure to plead this issue as an "arbitration and award" in its new matter pursuant to Pa.R.C.P. 1030 and 1032, precluded it from asserting the defense at trial. We disagree.

■ Under Pa.R.C.P. 1030, a party must plead the affirmative defense of "arbitration and award" as "new matter." Failure to raise the defense in an answer as "new matter" effectuates a waiver of the defense. Pa.R.C.P. 1032; *See Teodori v. Penn Hills School District Authority,* 413 Pa. 127, 196 A.2d 306 (1964). However, the affirmative defense of "arbitration and award", which must be pleaded in bar of a lawsuit, differs significantly from the defense of failure to exhaust contractual remedies, which may be raised at any time during the course of trial. Appellee's defense was not that the dispute had been finally resolved through arbitration, but that appellant had an unfulfilled contractual

duty to attempt to resolve the dispute through the grievance machinery provided in the collective bargaining agreement as a condition precedent to filing suit. We have held that this type of defense amounts to a failure to state a claim upon which relief can be granted. *Beebe, supra* 205 Pa.Super. at 153, 208 A.2d at 20. According to Pa.R.C.P. 1032, failure to state a claim upon which relief can be granted is a non-waivable defense and may be raised at any time during the course of trial.[5] Because appellant did not follow the grievance procedure provided in the collective bargaining agreement and appellee properly raised that as a defense at trial, the trial court properly granted appellee's motion for judgment n.o.v.

Accordingly, we affirm the order of the trial court.

---

5. We also note that while Pa.R.C.P. 1030 provides a list of affirmative defenses which must be pleaded as "new matter", the last sentence of the rule provides: "A party *may* set forth as new matter any other material facts which are not merely denials of the preceding pleadings." (emphasis added). Consequently, it appears that a failure to exhaust contractual remedies would constitute a material fact which either may be pleaded permissively as "new matter" or raised at a later time.