384 S.E.2d 366

**Roberta P. CHAPPLE**

v.

**FAIRMONT GENERAL HOSPITAL, INC., et al.**

**No. 18841.**

Supreme Court of Appeals of West Virginia.

July 27, 1989.

Robert M. Amos, Fairmont, for Roberta P. Chapple.

Stephen R. Brooks, Furbee, Amos, Webb & Critchfield, Fairmont, for Fairmont Gen.

Philip C. Petty, Fairmont, for Servicemaster.

WORKMAN, Justice:

Appellant Roberta Chapple instituted action on May 2, 1988, in the Marion County Circuit Court against her employer, appellee Fairmont General Hospital ("Hospital"), alleging it had breached its employment contract with her. She also claimed that the other appellee, ServiceMaster Company, a management firm which advised Fairmont General Hospital, had by its participation in the Hospital's decision to terminate her, tortiously interfered with her employment contract. Appellant made no allegation of unfair or inadequate union representation. The Hospital and ServiceMaster each moved to dismiss the action on the ground that the appellant had failed to exhaust her remedies under the collective bargaining agreement governing her employment. The circuit court granted the motions without making findings of fact or conclusions of law.

Appellant makes the following assignments of error:

1. The Lower Court erred in granting appellee's Motion for Summary Judgment of dismissal, particularly where diametrically opposed to the law and the provisions of the Collective Bargaining Agreement/Contract.

2. The Lower Court erred in failing to make any Findings of Fact or Conclusions of Law, as required.

3. The Lower Court erred in failing to state the grounds relied upon in denying Appellant's Motion to Reconsider, and disregarding basic contract law.

Although the assignments of error are rather inartfully stated, the appellant's brief makes clear her contentions that (1) the words "*may* demand that the grievance be submitted to arbitration" (emphasis added) in the collective bargaining agreement

grievance procedure render arbitration optional, not mandatory; and (2) when the grievance was not advanced to arbitration, the appellant was entitled to file action in the circuit court.

Appellees contend that (1) the grievance procedure set forth in the collective bargaining agreement between the Hospital and the Union established the mechanism for the resolution of all disputes as to the application of any provision of the agreement; (2) the appellant and the Union failed to exhaust the remedies available under the agreement by not having her grievance submitted to arbitration; and (3) the appellant did not allege nor prove that the Union breached its duty of fair representation, thus failing to bring her case within the parameters of this narrow exception to the mandatory exhaustion of remedies rule. Appellees further contend that in exercising their concurrent jurisdiction with federal courts in an action involving an alleged breach of a collective bargaining agreement, state courts must apply federal substantive law. This Court concludes the appellees' contentions are correct and affirms the judgment of the circuit court.

The facts pertinent to the issues here are undisputed. The Hospital hired appellant as housekeeper in February 1986. After she was hired she joined the Retail, Wholesale and Department Store Union, AFL–CIO ("Union"). On June 30, 1986, the Hospital executed a collective bargaining agreement with the Union. Section XV of this Agreement provides "the Hospital shall have the right to ... discharge or otherwise discipline an employee for just cause." The collective bargaining agreement included a four-step grievance procedure [1] which defined a grievance and outlined appropriate steps for resolution.

---

1. The grievance procedure is set out in pertinent part below.

Article XIII. Grievance procedure

Section A. A grievance within the meaning of this Agreement shall be a dispute raised by an employee or the Union involving interpretation or application of any provision of this Agreement, including any discipline or discharge of an employee in the bargaining unit.

Section B. Procedure. First Step: An employee will attempt to adjust his grievance orally with his immediate supervisor, with or without his steward present. If the answer of the supervisor is unsatisfactory, the grievance shall be reduced to writing within three days of the supervisor's answer or the incident causing the grievance, whichever is later, and submitted to

On December 7, 1987, appellant was fired for alleged insubordination.[2] Appellant filed a grievance and her Union advanced this grievance through the first three steps, but it was not submitted to the fourth step, arbitration. The grievance procedure in pertinent part provides:

> If a grievance is not resolved under the provisions of this Article [setting forth the grievance procedure], the Union *may* demand that the grievance be submitted to arbitration.... No grievance shall be submitted to arbitration without the consent of an International Representative of the Union.
>
> ....
>
> [A]ny grievance not advanced by the Union will be considered dropped.... (emphasis added)

The Hospital and ServiceMaster contend that because the claim was not advanced to arbitration, it must be considered dropped pursuant to Section D of the grievance procedure.

the Department Head (Department Head may be the immediate supervisor).

Second Step: The Department Head, Administrator or his representative, and the supervisor will meet with the Union's Grievance Committee and discuss the matter within one week of receipt of the written grievance. The Hospital's answer will be given in writing within three days of the meeting.

Third Step: If the Hospital's answer is unsatisfactory to the Union, it shall so inform the Hospital within one week of the receipt of the written answer. The Hospital and the Union shall then, within three working days of such notification from the Union, arrange for a meeting between such persons as the Hospital designates and the International Representatives of the Union. The Hospital will answer the grievance within one week of this meeting.

Fourth Step: *If a grievance is not resolved under the provisions of this Article, the Union may demand that the grievance be submitted to arbitration.* Such demand shall be made within five working days after the answer in Step Three. *No grievance shall be submitted to arbitration without the consent of an International Representative of the Union.* The Union must state in the request for arbitration exactly what part of the Contract it alleges that the Hospital is violating and why. In the event the grievance is submitted to arbitration, the following procedure will apply: the Arbitrator will be selected under the procedures of the Federal Mediation

## I. APPLICABLE LAW

The federal Labor Management Relations Act was enacted in 1947. Its stated purpose in part is

> to prescribe the legitimate rights of both employees and employers in their relations affecting commerce, to provide orderly and peaceful procedures for preventing the interference by either with the legitimate rights of the other, to protect the rights of individual employees in their relations with labor organizations whose activities affect commerce ... [and] to define and proscribe practices on the part of labor and management which affect commerce....

29 U.S.C. § 141(b) (1947).

Congress recognized the unequal bargaining power between individual employees and management, and the benefits to employees to organize and to collectively bargain with their employer. 29 U.S.C. § 151 (1947). The Labor Management Relations Act was designed to encourage "the practice and procedure of collective bargaining

and Conciliation Service. The decision of the Arbitrator will be binding on both the Hospital and the Union. The Arbitrator's fees and expenses shall be paid jointly by the Hospital and the Union. The Arbitrator will have no authority to add to, delete, or change any portion of this Agreement. (emphasis added)

....

Section D. A grievance not presented within three working days after the incident causing it, becomes known to the aggrieved party, shall be waived unless extenuating circumstances exist which make it impossible for the grievance procedure to be followed. All time limits stated in the grievance procedure will be mandatory unless waived; *any grievance not advanced by the Union will be considered dropped,* and any grievance not answered by the Hospital will be considered granted. (emphasis added)

Section E. The Union will notify the Hospital in writing of its position at each step of the grievance procedure. The Union shall allege which section of the Contract is being violated in the original written grievance.

**2.** It should be noted at the outset that the issue of whether or not the appellant was terminated for just or sufficient cause is not before this Court. The primary issue before this Court is whether the appellant exhausted her remedies under the collective bargaining agreement to the extent necessary to enable her to institute civil action.

... for the purpose of negotiating the terms and conditions of [workers'] employment...." *Id.* Although state and federal courts have concurrent jurisdiction in actions involving an alleged breach of a collective bargaining agreement, the substantive law to be applied in suits under § 301(a) of the Labor Management Relations Act is federal law. *Textile Workers Union of Am. v. Lincoln Mills of Ala.*, 353 U.S. 448, 456, 77 S.Ct. 912, 917–18, 1 L.Ed.2d 972 (1957); *Charles Dowd Box Co. v. Courtney*, 368 U.S. 502, 507–12, 82 S.Ct. 519, 522–25, 7 L.Ed.2d 483 (1962); *See also William E. Arnold Co. v. Carpenters Dist. Council*, 417 U.S. 12, 16, 94 S.Ct. 2069, 2072, 40 L.Ed.2d 620 (1974). In *Lincoln Mills*, the federal courts were directed to fashion a body of federal law for the enforcement of collective bargaining agreements, including specific laws to enforce arbitration agreements. *Lincoln Mills*, 353 U.S. at 451, 77 S.Ct. at 915 (citing *Textile Workers Union of Am. v. Am. Thread Co.*, 113 F.Supp. 137, 141 (1953)).

This position was further clarified in *Local 174, Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962), when the Supreme Court held "substantial principles of federal labor law must be paramount in the area covered by [§ 301]", and that "incompatible doctrines of local law must give way to principles of federal labor law." *Id.* at 102, 82 S.Ct. at 576. The Court reached this holding because of the need for uniform labor laws which would promote union's and management's willingness to negotiate collective bargaining agreements. *Id.* at 103–04, 82 S.Ct. at 577. "A state rule that purports to define the meaning or scope of a term in a [labor] contract suit therefore is pre-empted by federal labor law." *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 210, 105 S.Ct. 1904, 1911, 85 L.Ed.2d 206 (1985). Obviously "[t]he Supreme Court long ago recognized that collective bargaining agreements were not to be interpreted under traditional rules of contract but under a federal common law of collective bargaining." *Dist. 17, Dist. 29, Local Teamsters 7113 v. Allied Corp.*, 765 F.2d 412, 418 (4th Cir.1985) (citing *Lincoln Mills*, 353 U.S. at 448, 77 S.Ct.

at 913). Clearly, "interpretive uniformity and predictability" require "labor-contract disputes to be resolved by reference to federal law" and "also require that the meaning given a contract phrase or term be subject to uniform federal interpretation." *Allis–Chalmers*, 471 U.S. at 211, 105 S.Ct. at 1911.

The collective bargaining agreement in the instant case defines a grievance as "a dispute raised by an employee or the Union involving interpretation or application of any provision of this Agreement, including any discipline or discharge of an employee in the bargaining unit." Obviously this dispute between appellant and the Hospital involving her discharge is clearly covered by the collective bargaining agreement. Federal labor law must be applied and state contract law is preempted.

## II. EXHAUSTION OF REMEDIES

■ Next it is necessary to examine whether federal labor law requires appellant to exhaust the remedies provided in the collective bargaining agreement's grievance procedure before she can file a claim in state court. The United States Supreme Court spoke to this issue in *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965) holding "[a]s a general rule in cases to which federal law applies, federal labor policy requires that individual employees wishing to assert contract grievances must *attempt* use of the contract grievance procedure agreed upon by the employer and union as the mode of redress." *Id.* at 652, 85 S.Ct. at 616. It is clear that "Congress has expressly approved contract grievance procedures as a preferred method for settling disputes and stabilizing the 'common law' of the plant." *Id.* at 653, 85 S.Ct. at 616 (citing Labor Management Relationship Act § 203(d), 29 U.S.C. § 173(d); § 201(c), 29 U.S.C. § 171(c) (1958 ed.)). A rule which would allow "an individual employee to completely sidestep available grievance procedures in favor of a lawsuit has little to commend it;" because such a rule would decrease the union's status as the exclusive bargaining representative and deprive the

employer of "a uniform and exclusive method for the orderly settlement of grievances."[3] *Republic Steel,* 379 U.S. at 653, 85 S.Ct. at 617. Thus federal labor law strongly favors the utilization of a grievance procedure negotiated by the parties as the manner in which disputes should be resolved.

The collective bargaining agreement in the instant case provides that no grievance can be submitted to arbitration without the approval of an International Representative of the Union. The appellant argues that since the Union did not advance her grievance, and she did not have the right under the collective bargaining agreement to advance it herself, that she had exhausted all her remedies except for civil action. Conversely, appellees contend that in the event the Union does not advance the grievance, it must be considered dropped.

Two additional areas of inquiry must be examined to decide whether the appellant had the right to seek redress in the manner she did: (A) the meaning of the word "may" within the context of the collective bargaining agreement grievance procedure; and (B) whether the Union was required to advance the grievance to arbitration; and, since it failed to do so, whether it is necessary to prove the Union's failure to fairly represent the employee before the duty to exhaust remedies is excused.

## A. MEANING OF THE WORD "MAY"

■ The language of the fourth step of the grievance procedure identifies the Union as the only entity authorized to submit a grievance to arbitration. A grievance may not be submitted without the Union's approval. If indeed, as appellant alleges, the Union did not advance her grievance to arbitration, it is clear that she as an individual employee could not.

As stated before, federal labor law strongly supports arbitration, and any question as to whether arbitration applies must be resolved in the affirmative. *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 584–85, 80 S.Ct. 1347, 1354, 4 L.Ed.2d 1409 (1960); *Republic Steel,* 379 U.S. at 659, 85 S.Ct. at 619–20. This is true because "[a]rbitration is a stabilizing influence only as it serves as a vehicle for handling any and all disputes that arise under the agreement." *United Steelworkers of Am. v. Am. Manuf. Co.,* 363 U.S. 564, 567, 80 S.Ct. 1343, 1346, 4 L.Ed.2d 1403 (1960).

In *Republic Steel* the Court stated that the word "may" by itself did not demonstrate "a clear understanding between the contracting parties that individual employees, unlike the union or the employer, are free to avoid the contract procedure and its time limitations in favor of a judicial suit." *Republic Steel,* 379 U.S. at 658–59, 85 S.Ct. at 619. In *Allis–Chalmers* the Supreme Court indicated that the words "may bring it to arbitration" require disputes within a collective bargaining agreement to be "resolved exclusively through arbitration."[4] 471 U.S. at 204 n. 1, 105 S.Ct. at 1908 n. 1; *See also United Steelworkers,* 363 U.S. at 568, 80 S.Ct. at 1346. In *Republic Steel*

---

**3.** A party could bring a civil action if the collective bargaining agreement expressly provides that arbitration is not the exclusive remedy for the issue in conflict. *Republic Steel,* 379 U.S. at 657, 85 S.Ct. at 618.

**4.** Multiple federal courts have held that the use of the word "may" or "can" in a grievance procedure does not imply the option of a remedy other than arbitration. *Adkins v. Times–World Corp.,* 771 F.2d 829, 831 (4th Cir.1985), *cert. denied,* 474 U.S. 1109, 106 S.Ct. 896, 88 L.Ed.2d 930 (1986); *Ceres Marine Term. v. Int'l Longshoremen's Ass'n,* 683 F.2d 242, 246 (7th Cir.1982); *United Steelworkers of Am. v. Fort Pitt Steel Casting,* 598 F.2d 1273, 1279 (3d Cir. 1979); *Local 771, I.A.T.S.E. v. RKO Gen. Inc.,*

546 F.2d 1107, 1116 (2d Cir.1977); *Bonnot v. Congress of Indep. Unions Local No. 14,* 331 F.2d 355, 359 (8th Cir.1964); *Batts v. Louisville & N RR Co.,* 316 F.2d 22, 26 (6th Cir.1963).

In *Parsons v. Norfolk & W. Ry.,* 310 F.Supp. 1197 (S.D.W.Va.1970), *aff'd,* 442 F.2d 1075 (4th Cir.1971), the court stated the phrase, "may be submitted to arbitration" was correctly interpreted in *Bonnot.* 310 F.Supp. at 1202 The *Bonnot* court held that "[t]he obvious purpose of the 'may' language is to give an aggrieved party the choice between arbitration or the abandonment of its claim." *Bonnot,* 331 F.2d at 359. In other words, within the context of the collective bargaining agreement, "may" means "must". No other options are available. *Parsons,* 310 F.Supp. at 1202.

the Supreme Court stated that the use of the word "may" was not sufficient to overcome the presumption in favor of arbitration and did not indicate that parties were free to avoid the arbitration process. 379 U.S. at 658–59, 85 S.Ct. at 619. Avoidance of the grievance procedure would allow essentially the same suit to be brought directly in state court under another label and thus eviscerate the effectiveness of a negotiated grievance procedure. *Allis–Chalmers*, 471 U.S. at 219–20, 105 S.Ct. at 1915.

Furthermore, in interpreting the meaning of words and phrases in a collective bargaining agreement the courts may examine the use of terms in prior collective bargaining agreements and the interpretations of these by courts. "Continued use of the same terms after judicial construction implies the acceptance of the court's interpretation." *Combs v. Maben Energy Corp.*, 637 F.Supp. 954, 958 (S.D.W.Va. 1986) (citing *Carbon Fuel Co. v. UMWA*, 444 U.S. 212, 222, 100 S.Ct. 410, 416, 62 L.Ed.2d 394 (1979));

A review of federal labor law reveals almost uniform interpretation that "may arbitrate" means "must arbitrate or abandon". Consequently, the appellant is incorrect in her assumption that she had a choice between arbitrating her claim or filing a lawsuit. "[F]or matters relating to a collective bargaining contract, the grievance procedure provided therein states the exclusive remedies." *Davis v. Monsanto Co.*, 627 F.Supp. 418, 422 (S.D.W.Va.1986). Thus appellant was precluded from bringing civil action unless she falls within an exception to this rule.

### B. FAILURE OF THE UNION TO ADEQUATELY OR FAIRLY REPRESENT.

 If an employee can demonstrate that the union breached its duty to adequately or fairly represent him, he may be excused from the failure to exhaust his remedies. *Harding v. United States Postal Service*, 618 F.Supp. 1330, 1331–32 (S.D.W.Va.1985). The union can breach this duty to the employee by conduct that is perfunctory, arbitrary, discriminatory, or in bad faith. *Vaca v. Sipes*, 386 U.S. 171, 190, 87 S.Ct. 903, 916–17, 17 L.Ed.2d 842 (1967); *See also Carpenter v. W. Va. Flat Glass Inc.*, 763 F.2d 622, 624 (4th Cir.1985). Simple negligence, ineffectiveness, or poor judgment is insufficient to establish a breach of the union's duty since "a flawless performance is not required to fulfill the union's duty" to adequately represent. *Ash v. UPS Inc.*, 800 F.2d 409, 411 (4th Cir.1986). Thus, if appellant had alleged that the Union failed to adequately represent her, she could maintain this action in the circuit court and have the opportunity in that forum to prove the allegation.

The United States Supreme Court case of *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967) closely mirrors the facts of the instant case and is directly on point. In *Vaca*, the employee was discharged and filed a grievance. The union advanced the grievance up to arbitration. The union had the sole power to refer the grievance to arbitration, and, after evaluating the case, refused to do so. The employee filed suit in state court against the employer for violating the collective bargaining agreement and the union for refusing to take the claim to arbitration.

The *Vaca* Court examined the contention that all employees should have the right to take a grievance to arbitration. *Vaca*, 386 U.S. at 190, 87 S.Ct. at 916–17. The Court resolved this issue by saying "we do not agree that the individual employee has an absolute right to have his grievance taken to arbitration regardless of the provisions of the applicable collective bargaining agreement." *Id.* at 191, 87 S.Ct. at 917. The *Vaca* Court stated the union's right to end frivolous grievances prior to arbitration would save time, money and build confidence between the Union and the employer. The "settlement machinery" established by contract could be undermined if the individual employee had the right to force arbitration. *Id.* Thus the *Vaca* Court held "a union does not breach its duty of fair representation, and thereby open itself up to a suit by the employee for breach of contract, merely because it set-

tled the grievance short of arbitration." *Id.* at 192, 87 S.Ct. at 918.

The Court noted that since the collective bargaining system "of necessity subordinates the interests of an individual employee to the collective interest of all employees in a bargaining unit", it was essential that the union adequately represent the employee during the grievance procedure. *Id.* at 183, 185–86, 87 S.Ct. at 913, 914. If the union fails to adequately represent the employee and has the sole power to invoke the arbitration process, the employee may obtain judicial review of the discharge despite his failure to exhaust the procedures identified in the grievance process. *Id.* at 185–86, 87 S.Ct. at 914. Thus, the Court ruled "the wrongfully discharged employee may bring an action against his employer in the face of a defense based upon failure to exhaust contractual remedies, provided the employee can prove that the union as a bargaining agent breached its duty of fair representation in its handling of the employee's grievance." *Id.* at 186, 87 S.Ct. at 914.

Subsequently, in *DelCostello v. Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), the Supreme Court clarified the process required to demonstrate a discharge was contrary to the contract, and that a union had breached its duty of representation. *Id.* at 165, 103 S.Ct. at 2291. "The employee may, if he chooses, sue one defendant and not the other, but the case he must prove is the same whether he sues the one, the other, or both. The suit is thus not a straightforward breach-of-contract suit under § 301 ... but a hybrid § 301/fair representation claim...." While the employee does not have to sue the union, he must allege and prove its breach of duty to fairly represent.

At no point has the appellant alleged or argued failure of the Union to adequately

represent her, neither in her original complaint nor her petition on appeal. Consequently, appellant has failed to bring her case into the parameters of this exception to the rule requiring exhaustion of grievance procedures remedies.

## III. PROCEDURAL COMPLAINT

In assignment of error (3), appellant complains that the circuit court did not make findings of fact and conclusions of law; nor did it state the grounds relied upon in denying appellant's motion to reconsider. However, it is clear from the pleadings that the facts upon which the court granted the motion to dismiss below were not in dispute.[5]

Although appellant characterizes the motion granted by the trial court as one sounding in summary judgment, it is clear that the motion granted was in the nature of a Rule 12(b)(6) dismissal for failure to state a claim upon which relief can be granted or a Rule 12(c) judgment on the pleadings. *See W.Va.R.Civ.P.* 12(b)(6) & 12(c).

■ Appellant further complains that the trial court granted summary judgment without making findings of fact. Obviously, it would be totally improper for the trial court to make findings of fact in connection with granting a summary judgment, as the very nature of summary judgment is that there is no genuine issue of material fact, entitling the moving party to judgment as a matter of law. *W.Va.R.Civ.P.* 56.[6]

■ Lastly, a trial court is under no obligation to state grounds for denial of a motion for reconsideration of a previous ruling.

Therefore, for the reasons stated above, we affirm the ruling of the Marion County

---

**5.** To the extent any facts were in dispute in the pleadings, the trial court specifically indicated that in granting the Hospital's motion to dismiss, it viewed the facts in the light most favorable to the plaintiff. In addition, the facts in dispute in the pleadings related to the underlying issue of whether termination of appellant was justified, and consequently were not relevant to the issue before the court below in connection with the motion to dismiss.

**6.** Appellant seems to have confused *W.Va. R.Civ.P.* 56 and 52. Under Rule 52, which involves actions tried upon the facts without a jury or with an advisory jury, it is the obligation of the trial court to make findings of fact and conclusions of law.

Circuit Court dismissing the defendant Fairmont General Hospital.[7]

Affirmed.

---

7. After the filing of the present appeal Service-Master moved to dismiss, and that motion was granted by the Marion County Circuit Court on January 9, 1989. The circuit court, in granting the motion, stipulated that if the appellant was successful in her appeal before the Supreme Court she could rejoin ServiceMaster as a defendant upon proper motion. ServiceMaster, in effect, intervened in the present appeal. This Court believes that the reasoning impelling it to affirm the dismissal of the action against Fairmont General Hospital applies to the dismissal of ServiceMaster, and that the appellant has failed to show that the dismissal was improper.

The same reasoning applies to ServiceMaster, although their position before us is somewhat unclear. The court in *Wilkes–Barre Publishing Co. v. Newspapers Guild of Wilkes–Barre Local 120,* 647 F.2d 372 (3rd Cir.1981), *cert. denied,*

454 U.S. 1143, 102 S.Ct. 1003, 71 L.Ed.2d 295 (1982), recognized that a claim for tortious interference in a collective bargaining agreement was covered under § 301 of the Labor Management Relations Act. 647 F.2d at 380–81. As previously stated, § 301 requires the exhaustion of all prior remedies under the collective bargaining agreement before seeking judicial enforcement. The *Wilkes–Barre* court noted that "[t]hird parties, charged with interfering with the contract by inducing a violation should be entitled to have it construed by the expert tribunal selected for that purpose by the plaintiff, before having to respond to a charge of tortious conduct." *Id.* at 383. Thus appellant was required to exhaust the grievance procedure before bringing this suit against ServiceMaster in circuit court. This she did not do. Thus this Court affirms the Marion County Circuit Court dismissal of ServiceMaster as a party defendant.