653 A.2d 12

**Bernard SHAW and Evelyn Shaw, Appellees,**

v.

**Michael KIRSCHBAUM, D.O., Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 27, 1994.

Filed Dec. 30, 1994.

R. Bruce Morrison, Philadelphia, for appellant.

Benjamin Kuby, Philadelphia, for appellee.

Before McEWEN, TAMILIA and FORD ELLIOTT, JJ.

McEWEN, Judge:

This is an appeal by Michael Kirschbaum, D.O., (hereinafter appellant) from the judgment in the amount of $631,676.52 [1]

---

1. The jury awarded Mrs. Shaw $200,000.00 in compensatory damages and awarded Mr. Shaw $300,000.00 on his loss of consortium claim.

entered in favor of appellees, Bernard and Evelyn Shaw, on the verdict of the jury in this medical malpractice case following the dismissal of the post-trial motions filed by appellant. Appellant contends that he is entitled to judgment n.o.v.[2] based upon the failure of appellees to present sufficient evidence to establish a cause of action upon which relief could be granted. We are constrained to agree and, accordingly, reverse and remand for the entry of judgment n.o.v. in favor of appellant.

Appellee, Evelyn Shaw, was first seen by appellant, a cardiologist, in 1982 and, at that time, she had experienced two heart attacks and was suffering from a number of medical problems including congestive heart failure, high blood pressure, and chronic kidney disease. Appellant, having first treated Mrs. Shaw when she was admitted to Osteopathic Hospital, via the emergency room, with an episode of chest pain in April of 1982, subsequently acted as Mrs. Shaw's attending cardiologist. Physicians at Hahnemann Hospital thereafter in January of 1983 diagnosed Mrs. Shaw as suffering from an aortic aneurysm. This condition was monitored during three subsequent hospitalizations at Hahnemann Hospital in 1983 for heart and kidney problems, but the physicians at Hahnemann declined to advise surgical repair of the aneurysm because of Mrs. Shaw's overall physical condition.

The trial court, in response to the motion of appellee, molded the verdict to $631,676.52 to reflect $131,676.52 in delay damages.

2. Appellant has set forth the issues as follows in the brief presented in support of this appeal:

Whether the learned trial Judge erred in denying defendant's motion for judgment n.o.v. where plaintiff failed to present a *prima facie* case under any cause of action recognized in this Commonwealth, and instead the court effectively created a duty of informed consent imposed upon referring physicians who do not participate in the surgery involved?

Whether the learned trial Judge abused her discretion in denying defendant's motion for remittitur of Mr. Shaw's consortium claim, particularly where the amount of that consortium award ($300,000) exceeded the late Mrs. Shaw's compensatory award ($200,000)?

The latter issue is rendered moot by our ruling that judgment n.o.v. must be entered in favor of appellant.

Mrs. Shaw was subsequently admitted to Osteopathic Hospital in December of 1983 for congestive heart failure and acute pulmonary edema. During this visit, appellant evaluated the aneurysm and determined that it had increased in size but could not be treated surgically. Mrs. Shaw returned to Osteopathic Hospital less than one month later suffering from acute respiratory distress. Appellant at that time concluded, following surgical consultation by Dr. Edward Silverman, and communicated to Mrs. Shaw his belief that, absent surgical repair of the aneurysm, Mrs. Shaw could die in a matter of weeks.

Appellant recommended to Mrs. Shaw that she travel to the Texas Heart Institute located in Houston to have the dissecting aortic aneurysm surgically repaired by Doctors Michael DeBakey and Denton Cooley, based on his belief that due to the complexity and morbidity rate associated with the surgery, the expertise of these world-renowned surgeons was required. Mrs. Shaw, although reluctant to travel to Texas, eventually agreed to go to the Texas Heart Institute and Dr. Kirschbaum assisted with both the travel and financial arrangements for the Shaws.

Dr. Denton Cooley performed surgery on Mrs. Shaw on January 18, 1984, successfully resecting the aorta. Sadly, the absence of blood flow during surgery caused Mrs. Shaw to become partially paralyzed from the waist down, and unable to stand, or to walk, or to control her bladder or bowels. While paralysis as a result of the cessation of blood flow during surgery is a recognized risk inherent in repair of the aorta, the Shaws alleged that they were never informed of this risk or advised as to how or if the surgical repair of the aorta would effect Mrs. Shaw's other medical problems. Following her return to Philadelphia, Mrs. Shaw was hospitalized for long periods of time for rehabilitation and training in the activities of daily living as a paraplegic. After eight years of surely gallant resolve, Mrs. Shaw died of unrelated medical conditions.

Appellant first argues that he is entitled to judgment n.o.v. because, as a matter of law, the Shaws failed to present a

*prima facie* case under any cause of action recognized in this Commonwealth. We are obliged to agree.

> In reviewing a motion for judgment n.o.v., "the evidence must be considered in the light most favorable to the verdict winner, and he must be given the benefit of every reasonable inference of fact arising therefrom, and any conflict in the evidence must be resolved in his favor." *Broxie v. Household Finance Company*, 472 Pa. 373, 380, 372 A.2d 741, 745 (1977). *See also, Metts v. Griglak*, 438 Pa. 392, 264 A.2d 684 (1970) and *Gonzalez v. United States Steel Corp.*, 484 Pa. 277, 398 A.2d 1378 (1979). Moreover, [a] judgment n.o.v. should only be entered in a clear case and any doubts must be resolved in favor of the verdict winner. *See Atkins v. Urban Redevelopment Authority of Pittsburgh*, 489 Pa. 344, 414 A.2d 100 (1980) and *Steward v. Chernicky*, 439 Pa. 43, 266 A.2d 259 (1970). Further, "a judge's appraisement of evidence is not to be based on how he would have voted had he been a member of the jury, but on the facts as they come through the sieve of the jury's deliberations." *Brown v. Shirks Motor Express*, 393 Pa. 367, 375, 143 A.2d 374, 379 (1958).

*Moure v. Raeuchle*, 529 Pa. 394, 402, 604 A.2d 1003, 1007 (1992). *Accord: Rocker v. Harvey Co.*, 370 Pa.Super. 32, 36–37, 535 A.2d 1136, 1138 (1988); *Foley v. Clark Equipment Co.*, 361 Pa.Super. 599, 604–06, 523 A.2d 379, 382 (1987), *allo. denied*, 516 Pa. 641, 533 A.2d 712 (1987).

 Appellees alleged in their complaint that "contrary to his fiduciary duties ... [appellant] fail[ed] to give to Evelyn Shaw a full and complete disclosure of the risks and complications of the surgical procedure he coerced her to undertake [and] did use undue influence, coercion and duress to pressure said Evelyn Shaw to undergo cardiovascular surgery." At trial, appellees sought to establish that appellant fell below the standard of care of a reasonable and prudent attending cardiologist based upon the expert testimony of Jonas Brachfeld, M.D., that appellant had a duty to advise Evelyn Shaw of all of the risks attendant to the proposed surgery and how such surgery would affect each of her pre-existing conditions as

well as her overall physical condition. The trial court denied a motion for compulsory nonsuit, and in its 1925(b) opinion explained that, although appellant could not be liable to appellees based upon the doctrine of informed consent, the jury could find that appellant had *negligently* failed to fully inform appellees of the potential side effects of the surgery:

> Plaintiff's theory of recovery [was] based on Dr. Kirschbaum's breach of a duty which was not imposed upon him by the law but which he himself sought to undertake. *See* § 323 of the Restatement of Torts 2d.
>
> * * * * * *
>
> Dr. Kirschbaum gratuitously expanded the scope of his duty to Mrs. Shaw when he undertook the 'service' of persuading his patient to travel to the Texas Heart Institute for corrective surgery rather than merely referring her to the thoracic surgeon for an evaluation.
>
> * * * * * *
>
> The evidence introduced at trial unequivocally established that Dr. Kirschbaum's actions went much further than simply advising a patient to seek a consultation or a second opinion regarding the advisability of surgery to correct her aneurysm. Rather, the testimony reveals that he urged, persuaded and actively participated in convincing the Shaws to go to the Texas Heart Institute to undergo the surgery. He made necessary travel arrangements. Once he undertook the advocacy of surgery at the Texas Heart Institute, he was required to perform this duty non-negligently. Under these facts, Dr. Kirschbaum was required to advise his patient to the best of his ability about the effects of the proposed surgery upon her pre-existing medical conditions as well as the complications associated with the surgery. It is his failure to fulfill this duty which results in liability in negligence.

A breach of a *legal* duty is a condition precedent to a finding of negligence, and, unlike the trial court, we are unable to find the breach by appellant of any *legal* duty owed to Mrs. Shaw. Submission of the issue to the jury was, therefore, error.

## I. The Doctrine of Informed Consent

The appellate courts of this Commonwealth have historically interpreted the doctrine of informed consent as applying only to the surgeons who perform operations without first securing the informed consent of the patient. *Friter v. IOLAB [Iolab] Corp.*, 414 Pa.Super. 622, 626, 607 A.2d 1111, 1113 (1992). In determining whether the patient's consent to a surgical operation was "informed," one must consider whether the physician disclosed to the patient all of the facts, risks, and alternatives, which a reasonable person would deem significant in making a decision to undergo the recommended procedure. *Moure v. Raeuchle*, 529 Pa. 394, 404, 604 A.2d 1003, 1008 (1992); *Doe v. Dyer–Goode*, 389 Pa.Super. 151, 156, 566 A.2d 889, 891 (1989), *appeal denied*, 527 Pa. 587, 588 A.2d 509 (1990); *Rogers v. Lu*, 335 Pa.Super. 595, 485 A.2d 54 (1984). An operation performed without the patient's informed consent constitutes a battery upon the patient, thus making the physician or physicians liable for any injuries regardless of whether the surgery was negligently performed. *Moure v. Raeuchle, supra*, 529 Pa. 404, 604 A.2d at 1008; *Doe v. Dyer–Goode, supra*, 389 Pa.Super. 155, 566 A.2d at 891. *Levenson v. Souser*, 384 Pa.Super. 132, 557 A.2d 1081 (1989), *appeal denied*, 524 Pa. 621, 571 A.2d 383 (1989); *Sagala v. Tavares*, 367 Pa.Super. 573, 533 A.2d 165 (1987), *appeal denied*, 518 Pa. 626, 541 A.2d 1138 (1988). *See also Gray v. Grunnagle*, 423 Pa. 144, 223 A.2d 663 (1966); *Smith v. Yohe*, 412 Pa. 94, 194 A.2d 167 (1963).

Under normal circumstances only the physician who performs the operation on the patient has the duty of obtaining the patient's informed consent. Therefore, Dr. Clough, who only performed the appellant's pre-surgery physical examination, and Nurse Lockerman, who is not a physician, were under *no duty* to obtain the appellant's informed consent to the operation.

*Foflygen v. Zemel*, 420 Pa.Super. 18, 33, 615 A.2d 1345, 1352–1353 (1992), *allo. denied*, 535 Pa. 619, 629 A.2d 1380 (1992) (emphasis added).

▉▉▉ Appellees in the instant case, recognizing that there was no touching and thus no battery by appellant, sought to plead and prove that appellant was *negligent* in failing to adequately inform them of the possible complications associated with the recommended surgical procedure which was ultimately performed by Dr. Cooley. In effect, appellees sought to plead and prove an informed consent cause of action based on negligence. Such a theory does not constitute a viable cause of action in Pennsylvania.

As an intermediate appellate court, this Court is obligated to follow the precedent set down by our Supreme Court. In *Gray v. Grunnagle, supra,* and *Smith v. Yohe, supra,* 412 Pa. 94, 194 A.2d 167, our Supreme Court held that the patient's consent is a prerequisite to a surgical operation and an operation without the patient's consent is a battery. Recently, the Supreme Court has re-affirmed this long-standing precedent in *Moure v. Raeuchle, supra,* 529 Pa. 404, 604 A.2d 1008. Moreover, there have been numerous decisions of this Court, both panel and *en banc,* which have applied the rule set forth in *Gray v. Grunnagle, supra,* 423 Pa. 144, 223 A.2d 663, and *Smith v. Yohe, supra,* 412 Pa. 94, 194 A.2d 167, to informed consent cases. *Levenson v. Souser, supra; Doe v. Dyer–Goode, supra,* 389 Pa.Super. 155, 566 A.2d 891; *Sagala v. Tavares, supra,* 367 Pa.Super. 573, 533 A.2d 165; *Sauro v. Shea,* 257 Pa.Super. 87, 390 A.2d 259 (1978); *Cooper v. Roberts,* 220 Pa.Super. 260, 286 A.2d 647 (1971). Thus, we are compelled to analyze informed consent cases under a battery theory until and unless our Supreme Court decides to recognize an informed consent cause of action grounded in negligence. *Levenson v. Souser, supra,* 384 Pa.Super. 132, 557 A.2d 1081.

*Foflygen v. Zemel, supra* 420 Pa.Super. at 34, 615 A.2d at 1353. *See, e.g.: Sinclair v. Block,* 534 Pa. 563, 568–70, 633 A.2d 1137, 1140 (1993); *Stover v. Association of Thoracic and Cardiovascular Surgeons,* 431 Pa.Super. 11, 25–27, 635 A.2d 1047, 1054 (1993); *Dible v. Vagley,* 417 Pa.Super. 302, 308–10, 612 A.2d 493, 496 (1992), *allo. denied,* 535 Pa. 619, 629 A.2d 1380 (1993); *Malloy v. Shanahan,* 280 Pa.Super. 440, 442–43, 421 A.2d 803, 804 (1980). Thus, under well-settled principles of tort law, appellant could not, as a matter of law, be found

liable to appellees on any cause of action based upon lack of informed consent. The trial court, however, found that

> [a]lthough Pennsylvania law imposes no duty upon Dr. Kirschbaum, a non-operating physician, to discuss the medically established risks associated with the surgical repair of her aneurysm, he voluntarily assumed this duty when he undertook to advocate that Mrs. Shaw travel to the Texas Heart Institute for the specific purpose to undergo the operation. Dr. Kirschbaum gratuitously expanded the scope of his duty to Mrs. Shaw when he undertook the "service of persuading his patient to travel to the Texas Heart Institute for corrective surgery rather than merely referring her to the thoracic surgeon for an evaluation.

The trial court has, however, provided no legal basis upon which to find that appellant owed Mrs. Shaw a duty "to discuss the medically established risks" associated with the proposed surgery. The law of this Commonwealth imposes this duty *only* upon the surgeon actually performing the procedure and neither the trial court nor this Court is free to expand that duty.

## II. Section 323 of the Restatement (Second) of Torts

The trial court found that pursuant to Section 323 of the Restatement (Second) of Torts, appellant had gratuitously assumed an undertaking, i.e. assisting in the scheduling of the surgical procedure, and had negligently failed to properly perform that undertaking. Section 323 of the Restatement (Second) provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
>
> (a) his failure to exercise such care increases the risk of such harm, or
>
> (b) the harm is suffered because of the other's reliance upon the undertaking.

While Section 323 has been applied in numerous medical malpractice actions, it has never been utilized in a context similar to the instant case. *See, e.g.: Riddle Memorial Hospital v. Dohan,* 504 Pa. 571, 475 A.2d 1314 (1984) (failure of hospital to act reasonably in permitting doctor to remove patient from emergency room); *Gradel v. Inouye,* 491 Pa. 534, 421 A.2d 674 (1980) (failure to diagnose bone cancer); *Hamil v. Bashline,* 481 Pa. 256, 392 A.2d 1280 (1978) (failure to diagnose heart attack).

 Section 323 does not obviate the traditional components of a *prima facie* case sounding in negligence, but rather substitutes a gratuitous undertaking for the element of *duty.* A *prima facie* case of medical malpractice based upon a negligent act or omission requires the plaintiff to establish:

(1) the existence of a duty owed by the physician/defendant to the plaintiff/patient;

(2) a breach of that duty;

(3) that the breach of duty was the proximate cause of, or a substantial factor in, bringing about the harm suffered by the plaintiff/patient; and

(4) damages suffered by the plaintiff/patient that were a direct result of the harm.

*See: Mitzelfelt v. Kamrin,* 526 Pa. 54, 62, 584 A.2d 888, 891 (1990); *Accord: Morena v. South Hills Health System,* 501 Pa. 634, 641, 462 A.2d 680, 684 (1983).

 The trial court found that by undertaking the "advocacy of surgery", appellant assumed a duty on his part to advise Mrs. Shaw of "the effects of the proposed surgery upon her pre-existing medical condition as well as the complications associated with the surgery". This conclusion is unsupportable under both the law of this Commonwealth and the facts of this case. The trial court concluded that, when appellant recommended that the surgery be performed at the Texas Heart Institute of Drs. DeBakey and Cooley, appellant gratuitously accepted a duty to advise her in conformity with principles of informed consent. Appellant, who had communicated to appellees his belief that Mrs. Shaw would die in the

near future without the recommended surgery, undertook to assist in travel and financial arrangements but did not expressly or by implication undertake to obtain her informed consent. While one could engage in an academic discussion of the factual scenarios under which the gratuitous acts of assisting in the travel and financial arrangements could result in exposure to liability if those acts were negligently undertaken and harm thereby occurred, appellant did *not* undertake to obtain the informed consent of Mrs. Shaw to surgery which he did not and could not perform.[3] While appellant strongly urged that Mrs. Shaw undergo surgery, there is no duty in Pennsylvania, and we decline the invitation to *create* one in this case, to impose upon an attending or referring physician the obligation to provide all of the information necessary for the patient to provide an informed consent to the surgeon.

As heretofore noted, a recovery on a cause of action based on lack of informed consent is predicated upon a technical

---

**3.** The testimony of Dr. Denton Cooley established that the decision as to the advisability of surgery and the duty to obtain the informed consent of appellee was solely that of Dr. Denton Cooley:

Q. As a general rule, when a doctor such as Dr. Kirschbaum refers a patient to you, is it your practice to make your own diagnosis of the patient's medical condition before deciding on a specific course of treatment?
A. Yes.
Q. And did you do so with Mrs. Shaw?
A. Yes.
Q. And can you tell us again what your diagnosis of Mrs. Shaw was?
A. It was an expanding dissecting aneurysm of the thoracic aorta.

* * * * * *

Q. Did you alone make the final decision to operate on Mrs. Shaw?
A. Yes.

* * * * * *

Q. As a referring physician, was Dr. Kirschbaum asking you to make the final evaluation whether Mrs. Shaw needed the surgery or not?
A. Let me make it clear. I am not a technician, and I don't respond to an order from some referring physician to do an operation. It is my judgment as to whether it is indicated to do. So if somebody calls up and says, "Fix that man's aneurysm," it is my decision whether to fix the aneurysm or not. It was my opinion which was sought, and I make this therapeutic judgment.
Q. And in this case, your opinion was sought by Dr. Kirschbaum.
A. Yes.

battery. The trial court in an exercise of creative discernment attempted to expand that doctrine from the battery rationale to a negligence-based rationale, but such refashioning of the law may only be undertaken by our Supreme Court. Thus, we are obliged to direct that, upon remand, judgment n.o.v. be entered in favor of appellant.

Judgment vacated. Case remanded. Jurisdiction relinquished.