**ESTATE of Jeannette TRANOR,
et al., Plaintiffs,**

v.

**The BLOOMSBURG HOSPITAL,
et al., Defendants.**

**No. 4:CV–96–0327.**

United States District Court,
M.D. Pennsylvania.

March 15, 1999.

Shanin Specter, Joel J. Feller, Kline & Specter, Philadelphia, PA, for plaintiffs.

Francis G. Wenzel, Jr., Marshall Dennehy Warner Coleman & Goggin, Scranton, PA, for defendants.

### *MEMORANDUM*

McCLURE, District Judge.

### *BACKGROUND:*

On September 29, 1995, plaintiffs Jeannette Tranor and Richard Tranor (both now deceased) commenced this action with the filing of a complaint in the Eastern District of Pennsylvania alleging negligence on the part of the defendant health care providers. Plaintiffs also alleged that defendants committed battery by providing medical treatment without informed consent on the part of Jeannette Tranor. The case was transferred to this court by Order of Court dated January 17, 1996, which was supplemented by a memorandum dated January 22, 1996. The claim of battery as against defendant Bloomsburg Hospital was dismissed by Order of Court dated April 26, 1996. Plaintiff Delphine Meyers now represents the estates of Jeanette and Richard Tranor.

Before the court are: (1) a motion (actually, two such motions) by defendants Hinkle and Vickers for summary judgment on Count III of the complaint; (2) a motion by defendant Vickers for summary judgment as to Count I of the complaint insofar as it refers to negligent referral; (3) a motion by defendant Hinkle to dismiss claims raised pursuant to *Thompson v. Nason Hospital,* 527 Pa. 330, 591 A.2d 703 (1991); and (4) a motion by defendant Hinkle for summary judgment regarding negligence in the performance of surgery and negligent follow-up.

### *DISCUSSION:*

### *I. MOTIONS FOR SUMMARY JUDGMENT*

Plaintiff indicates that there is no opposition to the motions numbered (1), (2), and (4). Plaintiff's Brief in Opposition to Motion of Richard S. Hinkle, D.O., to Dismiss Claims Per: *Thompson v. Nason* at 1 n. 2. We construe this statement to mean that plaintiff concurs in the motions, and they will be granted. The first motion for summary judgment on Count III of the complaint will be denied as moot, based on the filing of the second motion.

### *II. MOTION TO DISMISS*

### A. Procedural Posture and Standard

The only remaining motion, then, is the motion to dismiss claims against Dr. Hinkle for negligent referral. We note first that, in contrast to a statement in the "Introduction" portion of Dr. Hinkle's reply brief, the motion is one to dismiss, not for summary judgment. No "separate, short and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried" was filed as required under LR 56.1 of the Local Rules for the Middle District of Pennsylvania. Absent a proper statement of facts, we cannot review the factual basis for the claim (or its lack of merit, as argued by Dr. Hinkle). We therefore confine our analysis to the legal validity of a claim for negligent referral.

A motion to dismiss under Fed.R.Civ.P. 12(b)(6) admits the well pleaded allegations of the complaint, but denies their legal sufficiency. *Hospital Building Co. v. Trustees of the Rex Hospital,* 425 U.S. 738, 740, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976). The complaint must be construed in favor of the plaintiff with every doubt resolved in the plaintiff's favor. *In re Arthur Treacher's Franchise Litigation,* 92 F.R.D. 398, 422 (E.D.Pa.1981). That is, the court must accept as true all factual allegations set forth in the complaint as well as all reasonable inferences that can be drawn from them. *Nami v. Fauver,* 82 F.3d 63, 65 (3d Cir.1996); *Jordan v. Fox, Rothschild, O'Brien & Frankel,* 20 F.3d 1250, 1261 (3d Cir.1994). The court looks only to the facts alleged in the complaint and any attachments, without reference to any other parts of the record. *Jordan* at 1261. "[A] case should not be dismissed unless it clearly appears that no relief can be granted under any set of facts that

could be proved consistently with the plaintiff's allegations." *Id.* (citing, *inter alia, Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)). Whether a plaintiff will ultimately prevail is not a consideration for review of a motion under Rule 12(b)(6). *Nami* at 65.

## B. Analysis

Plaintiff disclaims any reliance on *Thompson,* and indicates that the claim set forth in Count I of the complaint is brought under general principles of negligence. Succinctly and somewhat colloquially stated, the claim is that Dr. Hinkle should have known better than to send Jeanette Tranor to Dr. Brown for surgery because Dr. Brown was not competent and Dr. Hinkle knew it or should have known it. We agree with the parties that *Thompson* is inapposite, as it refers to corporate liability on the part of a hospital for negligent treatment.

Dr. Hinkle cites a number of cases in his reply brief which also are inapposite. Most of the cases cited refer to vicarious liability on the part of the referring physician for negligent treatment by the physician to whom the patient was referred. Plaintiff's claim here is that the referral itself was negligent, not that Dr. Hinkle should be liable for Dr. Brown's negligence.

For example, in *Shaw v. Kirschbaum,* 439 Pa.Super. 24, 653 A.2d 12 (1994), *allocatur denied,* 541 Pa. 652, 664 A.2d 542 (1995) (table), the plaintiff was advised by her cardiologist that she needed heart surgery. The cardiologist assisted with travel and financial arrangements for the surgery to be performed in Texas. Plaintiff asserted that no one advised her of a recognized risk inherent in the surgery which caused her to become partially paralyzed. *Id.* at 27, 653 A.2d at 13. The plaintiff's own cardiologist was not liable because the lack of informed consent made the surgery a technical battery for which only the surgeon could be liable. *Id.* at 30, 653 A.2d at 15. That is, the surgeon must obtain informed consent, and the referring physician was under no duty (an element of

negligence) to do so; Pennsylvania law simply does not recognize such a duty. *Id.* at 31–32, 653 A.2d at 15–16.

In this instance, plaintiff is not attempting to hold Dr. Hinkle liable for not informing her of a risk involved in the surgery, nor even for surgery allegedly performed poorly. Plaintiff is not even arguing that Dr. Hinkle was negligent in recommending surgery. Rather, plaintiff is alleging that Dr. Hinkle was negligent in referring Mrs. Tranor to an incompetent surgeon. In this line of argument, the allegedly botched surgery thus becomes the injury which was caused by the negligent referral.

Somewhat more analogous is the case of *Strain v. Ferroni,* 405 Pa.Super. 349, 592 A.2d 698 (1991), in which the Superior Court held that a physician was not liable for the acts of a "covering" physician because the primary physician was not the principal of the covering physician, exercising no control over the covering physician, and because the primary physician was not consulted in the care provided by the covering physician. *Id.* at 361–362, 592 A.2d at 704–705. The Superior Court also noted that the record reflected that the primary physician had confidence in the abilities of the covering physician and that the covering physician was independently licensed to practice medicine. *Id.* at 361 and 361 n. 6, 592 A.2d at 705 and 705 n. 6.

There appears to have been no question in *Strain* of the covering physician's competence, and plaintiff here does not contend that Dr. Hinkle was a principal of Dr. Brown. Again, the opinion is not particularly helpful in the situation presented in the instant case.

In *Hannis v. Ashland State General Hospital,* 123 Pa.Cmwlth. 390, 554 A.2d 574, *allocatur denied,* 524 Pa. 632, 574 A.2d 73 (1989) (table), a family practitioner referred the plaintiff to a specialist and apparently provided no further care. The Commonwealth Court held that the family practitioner did not have a duty to follow the care after a referral. *Id.* at 398, 554

A.2d at 578. Again, the case is not particularly helpful.

More suggestive is the Superior Court's opinion in *Jones v. Montefiore Hospital,* 275 Pa.Super. 422, 418 A.2d 1361 (1980), *vacated on other grounds,* 494 Pa. 410, 431 A.2d 920 (1981).[1] In that case, the plaintiff complained of a mass in her breast. Her physician referred her to a professional association which specialized in the diagnosis of breast cancer. After removal of one of two masses found in the plaintiff's breast, she developed cancer and a mastectomy was performed. The cancer had spread to a lymph node, so that the plaintiff underwent chemotherapy and other treatment. 275 Pa.Super. at 426–427, 418 A.2d at 1363. Among a number of other claims of error, the plaintiff argued that the trial court erred in failing to instruct the jury that a physician who refers a patient to a specialist but continues to provide care after the referral is negligent in failing to determine whether the patient received proper care from the specialist. *Id.* at 432 n. 4, 418 A.2d at 1367 n. 4. Dr. Hinkle summarizes the holding of *Jones* as "general practitioner is not liable for not discovering that the specialist did not adequately treat the patient." Reply Brief in Support of Motion to Dismiss at 3. This is not really an accurate statement of the holding.

The Superior Court referred to a case from New Jersey in which the plaintiff sued a general practitioner who treated the plaintiff with injections of a drug which caused deafness. *Marchese v. Monaco,* 52 N.J.Super. 474, 478, 145 A.2d 809, 811 (1958), *certification denied,* 28 N.J. 565, 147 A.2d 609 (1959). The defendant argued that, because he had consulted with specialists as to whether it was safe to administer the drug and the dosage to be used, he had exercised reasonable care. 52 N.J.Super. at 488, 145 A.2d at 817. The Superior Court of New Jersey held that consultation with specialists is evidence of due care but does not alone conclusively establish due care:

> The reason is obvious. In spite of the consultation the general practitioner still owes to the patient the duty to exercise his powers of observation and that degree of skill and learning possessed and exercised under similar circumstances by competent general practitioners. The case must be rare indeed in which the advice of a consultant will be an absolute defense to a doctor who closes his eyes completely and shelves that skill and caution which even a general practitioner must use.

*Id.*

The Pennsylvania Superior Court, in turn, stated, "Thus, the court in *Marchese* held that a general practitioner who refers a patient to specialists must comply with the same standard of care as in all other circumstances: the reasonable man standard. We believe this holding is correct." *Jones* at 432 n. 4, 418 A.2d at 1367 n. 4 (citations omitted). It added:

> We also believe that the converse of *Marchese* is correct: A general practitioner is not necessarily liable for failing to determine that the specialists to whom he referred a patient did not adequately treat the patient. Since [the plaintiff's] requested charge implied that a general practitioner was necessarily liable, it was properly rejected.

*Id.*

The discussion of *Marchese* in *Jones* is actually slightly inaccurate in that the *Marchese* case involved a consultation, not a referral. However, the point is the same: if a treating physician reasonably should be expected to realize that a specialist's care is inadequate, based on the standard of care of a general practitioner, then the general practitioner may be liable for failing to take appropriate steps. Conversely, if the general practitioner does not

---

**1.** The issue on appeal before the Supreme Court of Pennsylvania in *Jones* was whether the actions of the specialists increased the risk of harm to the plaintiff. The claim against the physician who made the referral was not before the Supreme Court. *Id.* at 413 n. 1, 431 A.2d at 922 n. 1.

realize that the specialist's care is inadequate, he or she is not *necessarily* liable, but may be liable if a general practitioner (under the same standard) should have recognized the inadequacy and taken appropriate steps. This principle would apply whether the treatment is by the general practitioner after consultation with a specialist or by the specialist and the general practitioner is providing further care. Considering this principle in conjunction with *Hannis*, the general practitioner is not required to provide follow up care or otherwise to continue treating the patient, but must exercise reasonable care if he or she does. That reasonable care would extend to recognizing deficiencies in the care provided by the specialist, if such recognition is within the skill and knowledge of a general practitioner.

■ Given these principles, we believe that a reasonable physician would not refer a patient to a specialist that the physician knows or has reason to know is not competent. We recognize, as did the Commonwealth Court in *Hannis*, that the specialist has an independent duty to diagnose the patient and to recommend treatment. However, the initial physician's ability to delegate this duty of care is based on a presumption that the specialist (or, as in *Strain*, a covering physician) is competent. We do not believe that the rule would apply when the referring physician knows or should know the specialist to be incompetent. This conclusion is based on a straightforward application of the standard of reasonable care.

In setting forth this conclusion, we think it important to note several observations. First, we do not know that Dr. Hinkle knew or had reason to know that Dr. Brown was not competent, and we certainly make no comment on Dr. Brown's actual competence. The motion filed by Dr. Hinkle was one to dismiss, so that there is no factual record before us related to these matters. We will not convert the motion to one for summary judgment because the necessary documents supporting such a motion, *see* Fed.R.Civ.P. 56(e), LR 56.1, are not before the court and directing the filing of such would entail further delay of a case already pending for some time.

We also note the difficulty in addressing this issue based on the manner in which it was presented to the court. Dr. Hinkle moved to dismiss the negligent referral claims because *Thompson* did not extend liability to a referring physician, instead holding that a hospital may be liable under a theory of corporate liability for care provided in the hospital. The short brief in support of the motion is limited to that issue. Plaintiff's somewhat longer brief indicates that Dr. Hinkle simply misconstrues the theory of recovery, that general negligence principles apply, and that there is a factual basis for the contention that there were shortcomings in Dr. Brown's training and experience of which Dr. Hinkle was aware. Only in his reply brief does Dr. Hinkle address the legal merits of a claim for negligent referral, making the argument rather one-sided. In addition, as noted, most of the authority cited (and therefore the related argument) is not directly on point.

■ Based on all of this, we limit our holding. We do not conclude that Dr. Hinkle knew or had reason to know that Dr. Brown was not competent to perform Mrs. Tranor's surgery, nor do we hold that such a shortcoming actually existed. Moreover, we do not conclude that every referring physician is liable for negligence on the part of a specialist to whom the patient is referred. We conclude only that negligent referral to a specialist, i.e. when the referring physician knows or has reason to know the specialist is incompetent, may be a basis for liability under general negligence principles. We further limit this holding to the motion to dismiss, and make no comment on whether the argument put forward by plaintiff would survive a motion for summary judgment or a motion for judgment as a matter of law, if such a motion were fully developed.

\*　　\*　　\*　　\*　　\*　　\*

An order consistent with this memorandum will issue.

### ORDER

For the reasons stated in the accompanying memorandum, **IT IS ORDERED THAT:**

1. The motion (record document no. 58) by defendants Hinkle and Vickers for summary judgment on Count III of the complaint is denied as moot.

2. The motion (record document no. 62) by defendants Hinkle and Vickers for summary judgment on Count III of the complaint is granted.

3. The motion (record document no. 65) by defendant Vickers for summary judgment regarding the negligent referral claims, Count I at ¶ 38(a)–(c), is granted.

4. The motion (record document no. 69) by defendant Hinkle for summary judgment regarding negligence in the performance of the surgery on October 5, 1993, Complaint at ¶ 38(d)–(*l*), (n), (q), (t), is granted.

5. The entry of judgment is deferred pending entry of final judgment on all remaining claims.

6. The motion (record document no. 67) by defendant Hinkle to dismiss the negligent referral claims is denied.