J-A01009-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| SHARON PORTER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ARIA HEALTH-FRANKFORD | : | No. 1554 EDA 2023 |

Appeal from the Judgment Entered May 12, 2023
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): July Term 2021 No.: 00236

BEFORE: LAZARUS, P.J., PANELLA, P.J.E., and COLINS, J.[*]

MEMORANDUM BY LAZARUS, P.J.:                    **FILED MAY 30, 2024**

Sharon Porter appeals from the order granting judgment notwithstanding the verdict (JNOV) in favor of Aria Health-Frankford (Aria Health), and against Porter, and dismissing the matter with prejudice. After careful review, we affirm.

The trial court set out the history of the case as follows:

[Porter] brought this matter as an arbitration case in July 2021, alleging that, on July 13, 2020, she was a "business invitee" at [Aria Health] hospital when she suffered a fall. . . . [Porter] claimed that she had sought treatment at the Emergency Room [(ER)] for "intestinal problems," explaining her presence at [Aria Health] as a business invitee, a status that [Aria Health] did not dispute. [Porter] alleged that, while using a public restroom near the ER, a "sudden and unexpected emanation of water from the sink took place, causing [Porter] to become startled, lose her balance and fall to the floor," striking her head. The [trial] court understands that the plain meaning of the word sink is a water

_____

[*] Retired Senior Judge assigned to the Superior Court.

basin[,] typical[ly] with a drain. [Porter] asserted liability based upon "failure to maintain the sink . . . failure to inspect the sink . . . failure to warn [Porter] of the dangerous condition existing in the sink . . . failure to assure business invitees that the sink was safe for use []and/or[] otherwise failing to use due care under the circumstances[.]" [Porter] did not allege what the dangerous condition was of the [sink. . . .]

The case proceeded to arbitration on May 2, 2022. The arbitrators entered verdict in favor of [Aria Health] and against [Porter], finding that [Aria Health] was not negligent. [Porter] appealed the decision on May 17, 2022, demanding a jury of 12 citizens. Following appeal of the finding in favor of [Aria Health], additional discovery occurred post-arbitration, and the case proceeded to trial before this court on March 6, 2023.

\* \* \*

[Porter]'s case consisted of three witnesses — [Porter], [Andre Andrews,] a hospital maintenance engineer, [] and [Porter]'s medical expert, Richard DuShuttle, M.D., whose video deposition was taken in November 2022. [Porter] did not provide any [] testimony of [a] liability expert or offer any direct evidence in her case in chief regarding the hospital's negligent or otherwise deficient inspection or cleaning procedures related to the sink. [Porter] also introduced and relied upon four exhibits: [Aria Health]'s record of a "Patient Safety Event" related to the incident[,] which only indicates that this incident took place at 4:30 a.m. and involved a piece of the "spigot" found in the sink, a handwritten log kept by [] Andrews of his activities during his shift beginning on July 12 and ending July 13, 2020 (indicating that he was able to "repair the sink"), a Life Expectancy Table, and the Deposition Transcript of [] Andrews.

\* \* \*

As to damages, counsel for [Porter] told the jury that [Porter]'s treatment and medical expenses she might incur in the future amounted to "around [$]3,000 a year." The number was presumably based upon [Dr. DuShuttle's] guestimate that [Porter] would potentially require future medical treatment totaling three to four weeks/year and physical therapy for the same number of days, at a ballpark of $250 per visit. . . . [T]he

jury awarded [Porter] $1.8 million, which it calculated based upon $6,000 per month.

Trial Court Opinion, 5/11/23, at 2-3, 10-11 (citations and footnote omitted).

After the verdict, Aria Health filed a timely motion for post-trial relief, arguing that the evidence presented at trial failed to establish a prima facie case of negligence against Aria Health and that the evidence did not support the jury's award of damages. Following filings from both parties, the trial court heard oral argument on the motion. Subsequently, on May 11, 2023, the court issued an order and opinion, granting Aria Health's request for JNOV, entering judgment in favor of Aria Health, and dismissing the matter with prejudice.

Porter filed a timely notice of appeal on June 6, 2023. On August 23, 2023, pursuant to Pa.R.A.P. 1925(a), the trial court gave notice that its May 11, 2023 opinion sufficiently addresses Porter's issues on appeal, and did not order Porter to file a Rule 1925(b) concise statement of errors complained of on appeal. On appeal, Porter raises the following questions for our review:

> 1. Did the trial court commit legal error and abuse its discretion when it granted JNOV in favor of [Aria Health] despite [Aria Health] never challenging the sufficiency of [Porter's] evidence at any point prior to the announcement of a unanimous jury verdict in her favor?
>
> 2. Did the trial court commit legal error and abuse its discretion by granting JNOV in favor of [Aria Health] when it failed to view [Porter's] evidence admitted at trial with all favorable inferences drawn therefrom, in a light most favorable to her?
>
> 3. Did the trial court commit legal error and abuse its discretion when it failed to resolve any doubts in favor of [Porter]?

4. Did the trial court commit legal error and abuse its discretion when it appraised the evidence on how it would have voted had the trial court been a member of the jury, rather than on facts as they were presented to the jury for their deliberation?

5. Did the trial court commit legal error and abuse its discretion when it failed to view the evidence presented by [Porter] as meeting her burden of proof?

Appellant's Brief, at 4 (unnecessary capitalization omitted). [1]

Our standard of review is well-settled:

Appellate review of [an order granting or denying] JNOV is quite narrow. We may reverse only in the event the trial court abused its discretion or committed an error of law that controlled the outcome of the case. Abuse of discretion occurs if the trial court renders a judgment that is manifestly unreasonable, arbitrary[,] or capricious; that fails to apply the law; or that is motivated by partiality, prejudice, bias[,] or ill-will.

When reviewing an appeal from the [grant or] denial of a request for [JNOV], the appellate court must view the evidence in the light most favorable to the verdict-winner and give him or her the benefit of every reasonable inference arising therefrom while rejecting all unfavorable testimony and inferences. . . . Thus, the grant of a [JNOV] should only be entered in a clear case and any doubts must be resolved in favor of the verdict-winner.

***Phillips v. Lock***, 86 A.3d 906, 919 (Pa. Super. 2014) (original brackets omitted).

Pennsylvania law makes clear that [JNOV] is proper only in clear cases where the facts are such that no two reasonable minds could

_____

[1] Porter has failed to comply with Pa.R.A.P. 2119(a), which states: "The argument shall be divided into as many parts as there are questions to be argued. . . followed by such discussion and citation of authorities as are deemed pertinent." Although Porter purports to raise five questions on appeal, she includes argument for only two, which we understand to argue questions one and two. We thus find claims three, four, and five waived for failure to properly divide her arguments and failure to develop meaningful arguments with citations to relevant legal authority. ***See Coulter v. Ramsden***, 94 A.3d 1080, 1088-89 (Pa. Super. 2014); Pa.R.A.P. 2119(a).

disagree that the verdict was improper. Questions of credibility and conflicts in evidence are for the fact-finder to resolve. This Court will not substitute its judgment based upon a cold record for that of the fact-finder where issues of credibility and weight are concerned.

*Ratti v. Wheeling Pittsburgh Steel Corp.*, 758 A.2d 695, 706 (Pa. Super. 2000) (citation omitted). *See also Menkowitz v. Peerless Publ'ns, Inc.*, 211 A.3d 797, 804 (Pa. 2019) ("JNOV should only be entered in a clear case with any doubts resolved in favor of the verdict winner. . . . [I]t is the trial court that has the benefit of an on-the-scene evaluation of the evidence.") (quotation marks and citation omitted).

A court may enter JNOV on one of two bases. The first is where a movant is entitled to judgment as a matter of law because, upon reviewing the record and deciding all factual inferences adverse to the movant, the law nonetheless requires a verdict in his [or her] favor. The second is where the evidence was such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant.

*Menkowitz*, 211 A.3d at 804 (quotation marks and citations omitted). A trial court must conduct its analysis by "consider[ing] all of the evidence admitted to decide if there was sufficient competent evidence to sustain the verdict. . . . view[ing] this evidence in the light most favorable to the verdict winner[.]" *Walker v. Drexel Univ.*, 971 A.2d 521, 523 (Pa. Super. 2009).

In Porter's first argument, she contends that Aria Health failed to properly preserve the right to request JNOV, and that the trial court committed an error of law by considering, and later granting, Aria Health's request for JNOV. *See* Appellant's Brief, at 15-19. Porter argues that Aria Health failed to either request a binding charge to the jury or move for a directed verdict

at the close of evidence, which is necessary to preserve the right to request JNOV. **See** Appellant's Brief, at 15 (citing **Thomas Jefferson Univ. v. Wapner**, 903 A.2d 565, 570 (Pa. Super. 2006)). We disagree.

We have held that even when an appellant fails to move for a directed verdict or otherwise preserve its right to seek JNOV, if "the trial court did not find waiver and instead addressed the issue. . . ., we decline to find waiver." **Wag-Myr Woodlands Homeowners Ass'n v. Guiswite**, 197 A.3d 1243, 1250 n.10 (Pa. Super. 2018). **See also Bank of Am., N.A. v. Scott**, 271 A.3d 897, 902 n.4 (Pa. Super. 2022) (declining to find waiver where trial court did not find waiver of JNOV and addressed issue); **Capital Care Corp. v. Hunt**, 847 A.2d 75, 84 (Pa. Super. 2004) (declining to find waiver where party failed to move for directed verdict, sought JNOV in post-trial motion, and trial court addressed issue); **Soderberg v. Weisel**, 687 A.2d 839, 845 (Pa. Super. 1997) (declining to find waiver where trial court had opportunity to correct errors and determined issues not waived); **cf. Thomas Jefferson Univ.**, 903 A.2d at 573 (holding **Soderberg** exception does not apply because trial court explicitly found issue was not preserved and trial court opinion not construed as opportunity to correct errors). Here, the trial court did not find waiver and had the opportunity to consider filings from both parties and heard oral argument on Aria Health's post-trial motion. **See generally** N.T. Post-Trial Motion Hearing, 4/20/23, at 4-26; Trial Court Opinion, 5/11/23, at 11-17, 31-33. Accordingly, we decline to find waiver and Porter's first argument fails. **Soderberg**, **supra**.

In Porter's second argument, she asserts that the trial court erred when it granted JNOV in favor of Aria Health and failed to view the evidence in the light most favorable to Porter. *See* Appellant's Brief, at 10. Porter argues that, when reviewing a motion for JNOV, the court must consider the evidence in a light most favorable to the verdict winner, and she "must be given the benefit of every reasonable inference of fact arising therefrom, and any conflict in the evidence must be resolved in her favor." *Id.* (citing *Moure v. Raeuchle*, 604 A.2d 1003, 1007 (Pa. 1992)).

Porter argues that the testimony was "sufficient for a jury to conclude that the bathroom . . . was constantly maintained" by Aria Health staff, and for that reason, Aria Health "was aware or should have been aware of the danger that awaited" Porter. Appellant's Brief, at 13. Porter further states that her injury was either caused by faulty maintenance or failure of staff to "reasonably inspect the faucet that led to" her injury. *Id.* However, as Porter repeatedly points out in her brief, a cleaning crew would regularly go into the bathroom to monitor, inspect, clean, and wipe down the area. *Id.* at 11-13 (citing N.T. Trial, 3/6/23, at 62-63, 69, 72-73, 84, 91).

In response, Aria Health argues that there was no evidence that the hospital created a dangerous condition, no evidence that the hospital had actual or constructive notice of a defect or dangerous condition, and that Porter attempted to argue strict liability, which is not the applicable standard in the instant case. Aria Health argues that Porter never established what portion of the sink "failed" and therefore could not establish how the failure

and Porter's injury occurred. *See* Appellee's Brief, at 13. In response to Porter's suggestion that there was faulty maintenance by Aria Health staff, Aria Health argues that there was no evidence to support this theory, and, rather, the testimony was the opposite: that the bathroom was regularly maintained, cleaned, and wiped down. *Id.* at 14.

Aria Health further argues that Porter failed to put forth any evidence that the hospital had actual or constructive notice because Porter could not establish a defect or dangerous condition. *Id.* at 15. There was no evidence presented at trial as to when the "dangerous condition" of the sink existed, which was bolstered by Porter's own testimony that she did not see or notice any issue with the sink before she used it. *Id.* at 16 (citing N.T. Trial, 3/6/23, at 43-44). Aria Health also points out that Porter did not question the hospital's facilities manager on cross-examination, during which she could have attempted to lay the foundation for an argument that the hospital had notice of the dangerous condition. *Id.* at 18.

In a premises liability case, a plaintiff must prove the following: "(1) the defendant owed the plaintiff a duty or obligation recognized by law; (2) the defendant breached that duty; (3) a causal connection existed between the defendant's conduct and the resulting injury; and (4) actual damages occurred." *Grove v. Port Auth. of Allegheny Cnty.*, 218 A.3d 877, 889 (Pa. 2019) (internal quotation marks and citation omitted). The nature of the duty is premised on the relationship between the parties at the time of the injury,

which, in this case, was that of proprietor and business invitee. As this Court

has explained, a party is subject to liability only if:

> he knows of or reasonably should have known of the condition and the condition involves an unreasonable risk of harm, he should expect that the invitee will not realize it or will fail to protect themselves against it, and the party fails to exercise reasonable care to protect the invitees against the danger.
>
> An invitee must prove either the proprietor of the land had a hand in creating the harmful condition, or he had actual or constructive notice of such condition.

*Estate of Swift by Swift v. Ne. Hosp. of Phila.*, 690 A.2d 719, 723 (Pa.

Super. 1997) (citations omitted).

The trial court provided the following detailed analysis with respect to

the issue of notice:

> In this case, [Porter] attempted to evade the factually proved issue of notice in two ways[:] first [Porter] appeared to suggest that the jury could presume notice based upon the hospital routine of cleaning and inspecting its restrooms (i.e., if the hospital had done a proper job it "should have" noticed the defect)[; second,] [Porter] argued a somehow sinister negative [inference from the fact] that [Aria Health] had not produced photos of the faucet, which meant that the jury could penalize [Aria Health] by assuming that the photographs would show a defect of which [Aria Health] "would have" had knowledge. Neither of these arguments would appear to "measure up" to the requirement of proof of notice, even if the matter is merely "constructive" notice.
>
> An invitee can satisfy its burden of proving that a proprietor knew or, in the exercise of reasonable care, should have known of the harmful condition, by establishing that the proprietor had constructive notice of the harmful condition. What constitutes constructive notice of a harmful condition depends on the circumstances of each case, but one of the most important factors to be taken into consideration is the time elapsing between the origin of the defect or hazardous condition and the accident, and the relative durability of the defect comprises a related factor.

- 9 -

*Neve v. Insalaco's*, [] 771 A.2d 786[, 791 (Pa. Super. 2001).] [] The duration of the hazard is important because if a hazard only existed for a very short period before causing any injury, then the possessor of the land, even by the exercise of reasonable care, would not discover the hazard, and thus would owe no duty to protect invitees from such a hazard. [*Id*.; *see also* Restatement (Second) of Torts § 343.]

Thus, a defendant is chargeable with constructive notice if the defective condition existed for such a period that[,] in the normal course of events, the condition would have come to the possessor's attention. *Green v. Prise*, [] 170 A.2d 318[, 320 (Pa. 1961)]. Some of the factors affecting the question, in addition to the time elapsing between the origin of the defect and the accident, are the size and physical condition of the premises, the need for inspection, the nature of the business conducted thereon, the number of persons using the premises and the frequency of such use, the nature of the defect and its location on the premises, as well as its probable cause, and the opportunity that the defendant, as a reasonably prudent person, had to remove it. [] *Davanti v. Hummell*, [] 185 A.2d 554[, 556-57 (Pa. 1962)]; *Stais v. Sears*[-]*Roebuck & Co.*, [] 102 A.2d 204[, 206 (Pa. Super. 1954)].

Holding the record in this case up to the necessary standard of proof laid out in [*Estate of Swift*, *supra*], the evidence does not show how the sink malfunctioned or what caused it [to do so]. The evidence certainly did not establish either through the testimony of Andrews or [Timothy] Mang[, the hospital facilities manager,] that [Aria Health] had previously had complaints about this sink or had repaired the faucet in any way, or even had a problem with any sink in any public restroom in the hospital. It is unclear from the trial record or the oral argument on [Aria Health's] Motion for Post-Trial Relief exactly what defect [Porter] claims existed other than a "loosened" spigot allegedly "created" by wiping it in the process of cleaning. [Porter] did not demonstrate how a spigot represented a "hazard" for which [Aria Health] could be charged with knowledge. [Porter] attempted to impose liability based upon the mere fact that hospital employees "cleaned" and thus were in contact with the faucet, presuming to suggest that no one else might ever have occasion to touch the faucet or [that] there could be no other reason, other than cleaning[,] for its failure. However, the record did not show any evidence as to how or why the water sprayed on [Porter] and whether it was a sink, break, loosening[,] or a pinhole opening or

- 10 -

even how a splash alone (with no water allegedly spilling on the floor) would have caused [Porter] to fall down.

[Porter presented] no evidence to show that the unidentified defect was of the type that already existed and would be obvious to the ordinary maintenance worker, as opposed to an instantaneous failure. Nor was there evidence as to how cleaning and wiping could cause the malfunction (only counsel's argument that it "must have") or how, in the course of cleaning, wiping[,] or inspecting, the average janitorial worker would have become aware of the yet[-]unidentified defect. . . . [**W**]**here the evidence adduced requires the jury to resort to "conjecture, guess or suspicion," the determination must be made by the court.** *Lanni v. Pa. R.R. Co.*, [] 88 A.2d 887, 889 [(Pa. 1952)] (emphasis added). . . . [T]his is not a case where[, for example, Porter] has shown a trail of debris or evidence of duration by virtue of rust or cleaning rags that would support an inference that would allow the jury to rely upon circumstantial evidence of constructive knowledge.

Without evidence of the precise danger or how that caused the water to spray on [Porter], why the defect was such that [Aria Health] "should have" known it was there when [Porter] herself testified that there was no obvious sign of anything wrong with the sink or faucet, or how merely cleaning and wiping would cause the malfunction of whatever part [Porter] asserts was "loosened," linking the incident to a duty on [Aria Health]'s part required pure speculation by the jury. [Porter]'s counsel invited the jury to make that leap not based upon evidence related to the length of time that a hazard existed or proofs that established that it was the type of defect that could have been discovered upon reasonable inspection or even a hired expert's conclusion, but based upon counsel's argument that the jury could presume negligence [from] the mere fact that the incident occurred on premises under [Aria Health]'s control. *Crawford v. Grocery Outlet Bargain Market*, 283 A.3d 384[, at *19] (Pa. Super. [July 20,] 2022) [(Table)[2]] ("Appellant presented no evidence addressing the requirements for proving constructive notice—that the defect was of a type with an inherently sustained duration and a witness saw the defect immediately before or after the accident.") ([citing] *Neve*, 771 A.2d at 791) [(cleaned up)]. This

---

[2] Pursuant to Pa.R.A.P. 126(b), non-precedential decisions filed after May 1, 2019, may be cited for their persuasive value.

court has a duty to prevent a jury from rendering a verdict based upon conjecture, surmise, guess[,] or speculation. ***Krishack v. Milton Hershey School***, 145 A.3d 762, 766 (Pa. Super. 2016)[.]

The mere fact that an accident occurred does not give rise to an inference that the injured person was the victim of negligence. ***McDonald v. Aliquippa Hospital***, [] 606 A.2d 1218, 1220 ([Pa. Super.] 1992). Pennsylvania law places the burden on the plaintiff to establish the existence of negligence on the part of the defendant. . . . Thus, establishing a breach of a legal duty is a condition precedent to a finding of negligence. ***Shaw v. Kirschbaum***, [] 653 A.2d 12, 15 ([Pa. Super.] 1994). [Porter] essentially sidestepped this element of proof when counsel advised the jury that [Aria Health] <u>was</u> negligent for "allowing" a faucet to spray water on a user.

Trial Court Opinion, 5/11/23, at 20-24 (some citations omitted) (emphasis original).

Viewing the evidence in the light most favorable to Porter, we conclude that the trial court did not abuse its discretion when it granted JNOV to Aria Health. In addition, the trial court did not err when it found there was insufficient evidence to sustain the verdict and no reasonable basis for the jurors to have found in favor of Porter. ***Walker***, ***supra***. It is clear that, in this case, Porter presented no evidence suggesting that Aria Health knew, reasonably should have known, or had actual or constructive notice of the dangerous condition of the sink or spigot. ***Estate of Swift***, ***supra***. Therefore, Porter failed to establish the necessary prongs of a premises liability case. ***Grove***, ***supra***. Accordingly, we affirm the order of the trial court granting Aria Health's motion for JNOV.

Judgment affirmed.

- 12 -

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/30/2024